[Civ. No. 22458. Second Dist., Div. One. May 7, 1958.]

REALTY COMPANY OF AMERICA, INC. (a Corporation), Appellant, v. ROY W. BURTON, as Special Administrator, etc., et al., Respondents.

ROY W. BURTON, as Special Administrator, etc., et al., Respondents, v. E. L. REMER et al., Appellants.

Wolver & Wolver and Eugene L. Wolver for Appellants.

Avery M. Blount and Edward S. Cooper for Respondents.

WHITE, P. J.—Two actions were consolidated for trial; joint findings of fact and conclusions of law were signed and a single judgment was rendered on the issues presented by the two actions.

Appellants herein were the plaintiffs in the initial action and were the defendants and cross-complainants in the second and subsequent action.

The initial action herein was instituted by appellant Realty Company of America, Inc., against respondents seeking declaratory relief, concerning the validity of a purported written "Notice of Rescission" given by respondent L. W. Coffee to appellant dated and served August 3, 1954. The notice of rescission pertains only to the "contract dated August 7, 1953" between appellant Realty Company of America, Inc., as first party and respondent L. W. Coffee as second party. By its complaint appellant seeks the declaratory judgment of the court that said notice of rescission is ineffectual and that the aforesaid contract of August 7, 1953, is in full force and effect and has not been cancelled. The last named contract recited that respondent L. W. Coffee is the subdivider of certain property in Riverside County, designated as "Desert Hot Springs Tract No. 7." It is then set forth that:

"WHEREAS: Said parties are desirous of arranging for the sale of such units as placed on the market from time to time, subject always to the approval of the Second Party, and that in no event shall performance of a contract exceed a period of five (5) years, and

"WHEREAS: The parties hereto are desirous and agreeable of arranging for the services of the First Party in the sale and contract of sales of such lots as shown on the proposed map of Desert Hot Springs Tract No. 7 passed by the Riverside County Planning Commission, except Lots 914, 915 and 916, which are reserved by Second Party, . . ."

The purpose of said contract is thus defined:

"That the purpose of this agreement is to arrange for the sale or attempted sale either for cash or on contract, of

certain lots or parcels of real property owned by Second Party and subdivided but unsold in Desert Hot Springs Tract No. 7 in Riverside County, State of California. It is understood and agreed that said Tract No. 7 is divided into nine units and that one or more units will be made available for First Party from time to time. Being further understood and agreed that when 80% of any one unit is sold and on contract to bona fide purchasers, that the Second Party will make ready another unit for the purpose of additional sales.''

The contract then provides that L. W. Coffee warrants that ''he has and will have marketable title to all property herein referred to and that upon the completion of any contract for purchase or any cash purchases, he will deliver to the purchaser or purchaser's nominee or assignee, a good, valid and marketable title and Policy of Title Insurance from the Riverside Title Company.'' It was further agreed that L. W. Coffee would furnish to Realty Company of America, Inc., adequate facilities and documents, such as contracts for the purchase of said property, display maps of said Tract No. 7, and sales maps of each unit ''as opened for sale.'' Realty Company of America, Inc., agreed at its own expense to ''furnish all reasonable and necessary advertising, adequate salesmen, tract men and preliminary deposit receipts; that First Party shall make weekly reports to Second Party of all the business activities conducted hereunder by the First Party including the making of any preliminary form of contract or receipts (to be furnished by First Party); First Party shall only use forms of contracts and deeds furnished by or approved by Second Party annexed hereto and designated as Exhibit 'A' for the Contract of Sale and Exhibit 'B' for Deed.'' There was annexed to the contract and made a part thereof a list of property in Desert Hot Springs Tract Number 7, and first party was ''given the right and privilege to sell the same for and on behalf of second party and to obtain, receive and accept deposits or down payments thereon and to give receipts or acknowledgments therefor and preliminary agreements for the purchase thereof in the name of Second Party and to subsequently arrange for a contract (when required) to be signed by Second Party for the sale and purchase of said property.''

As to compensation of the first party, the contract provided:

''(a) The First Party's compensation shall be 45% of the

schedule Sales Price of each lot. Each lot shall bear its own compensation and/or commission.

"(b) The First Party shall be entitled to the first 10% received on amount of purchase price of each lot by itself.

"(c) The First Party shall be paid 90% of all subsequent monthly payments after interest is first deducted, until such time as First Party shall have received its full compensation and/or commission.

"(d) In the event of cancellation or forfeiture by the purchaser, all compensation and/or commission due First Party shall cease on said lot or lots, HOWEVER, First Party shall be entitled to all compensation and/or commission on all payments received by Second Party prior to cancellation or forfeiture.

"SEVENTH: INTEREST

"(a) It is understood and agreed that Second Party shall retain all interest due on subsequent monthly payments.

"(b) That Second Party shall also retain 10% of all subsequent monthly payments, after interest is first deducted."

The contract then provides that second party shall keep true and correct accounts of all collections made and shall account to first party for payments so made on the 5th and 20th days of each month pursuant to a method set forth in the contract. It is then set forth:

"That the within covenants and the rights and privileges herein created in favor of First Party shall be exclusive and shall preclude either Second Party himself or his successors or assigns from selling any of said property so long as the First Party has sold on contract or for cash, $250,000.00 worth of property at List Price in each fiscal calendar year from the date hereof, such exclusive provision shall be applicable for the ensuing fiscal calendar year; that such provision shall apply from year to year hereafter until all lots to which this covenant shall pertain shall have been sold; that in the event such minimum sales shall not be complied with, such exclusive provision shall not thereafter be applicable thereto and thereafter, either party may terminate this agreement by giving to the other party a ninety day notice of termination."

The notice of rescission above referred to provided that it ". . . is hereby given on the ground that REALTY COMPANY OF AMERICA, INC. has been guilty of fraud and misrepresentation in its dealings with Mr. L. W. COFFEE and has failed to exercise the highest degree of good faith, as required by law of real estate brokers." By his answer to the complaint of

appellant Realty Company of America, Inc., respondent L. W. Coffee, in support of his notice of rescission alleged:

"(a) Secretly, appellants purchased from Mr. Wardman, approximately eighty acres of land in the Desert Hot Springs area, subdivided the same, and in so doing, misled the general purchasing public to the irreparable injury of defendant, selling such lands from a real estate office made available to Appellants by L. W. Coffee;

"(b) That by the use of intermittent advertising signs, advertised property owned by said L. W. Coffee alternately with property owned by Appellants, whereby the general purchasing public was misled:

"(c) That appellants contacted former purchasers of the land owned by L. W. Coffee and consummated trades with such persons, land owned by said Appellants, using for such purposes, the aforesaid real estate office:

"(d) That Appellants acquired title to real property in the Desert Hot Springs area by falsely representing:

"(1) That a parcel of property known as Block I, Tract 6, was being subdivided by A. Wardman, as owner, and that it had a *bona fide* offer to purchase such property; that Appellants refused to disclose to L. W. Coffee the name of such *bona fide* purchaser, and " 'that all the statements made by plaintiff to defendant, L. W. Coffee, concerning the bona fide offer to purchase said Block I were false, and were known by plaintiff to be false, and were made for the sole purpose of defrauding and deceiving defendant; and the only purpose of the plaintiff is making said statements was to enable it to acquire and subdivide said Block I, for its own account, to the exclusion of said L. W. Coffee.'

"(2) That in addition, the Appellants acquired property where conditional sales purchasers had defaulted.

"(e) That the Appellants had accepted monies as 'reserve deposits' and that they had appropriated the same and had failed to account to L. W. Coffee therefor, and

"(f) Upon the cancellation of purchase contracts, the Appellants have retained all the monies theretofore paid, and have failed to account to L. W. Coffee therefor."

The second action was filed approximately one month after the prior action. In it, L. W. Coffee and L. W. Coffee, Inc., are the plaintiffs and E. L. Remer, doing business as Realty Company of America, and Realty Company of America, Inc., a California corporation, are defendants. It contains six causes of action. It alleges the execution of agreements on

October 17, 1952, and August 3, 1953. The first cause of action alleges the secret profit and the failure to account to L. W. Coffee and said corporation. These allegations are the same as those contained in subparagraphs (a) and (b) of the answer in the prior action. The second cause of action alleges a sale of competitive property owned by appellants from the real estate office furnished by L. W. Coffee, and an alleged making of secret profits therefrom without accounting to plaintiffs in said action. These allegations are the same as those contained in subparagraph (c) of the answer in the prior action. The third cause of action initially contained the same allegations as those contained in subparagraph (d) of the answer in the prior action. During the trial, said cause of action was amended and as amended, alleges: (1) The same allegations as subparagraph (d)(1) and (d)(2) of the said answer in the prior action and in addition thereto, alleges (2) the attempt on the part of appellants to acquire said Block I, Tract 6 by means of a contract with one Andrew J. Subsaro, whereby appellants were to obtain the first deed of trust on said property.

In answer to said complaint the appellants herein allege that the schedule of prices annexed to the contract of October 17, 1952, which schedule did not contain a price for Block I, Tract 6, had been found to be mathematically inaccurate and had been supplanted by a new schedule, which contained an owner's, and release price, for said lot, as well as being mathematically correct as to prices for the other lots or parcels of property involved. That as to trades or other property acquired by the appellants, L. W. Coffee and L. W. Coffee, Inc., had in each instance, received in full, all consideration to which they were entitled, to wit, the release price from the property, and that as to trades, this had been done with the specific written authority of L. W. Coffee. That in regard to the purchase of the 80 acres from A. Wardman, the use of signs and the selling of appellants' property from the office furnished by L. W. Coffee, as well as the consent to the sale of Block I, Tract 6, for the aforesaid release price and a bonus of $3,500 all of the same were contained and authorized in a letter written on behalf of L. W. Coffee by his attorneys.

Contemporaneously with the filing of their answer appellants filed a cross-complaint, consisting of 15 causes of actions and subsequent thereto, an amendment and supplement, containing sixteenth to the twentieth, inclusive, causes of action. Said instruments will be jointly considered for the purpose

of résumé. The first five causes of action concern arrangements for the leasing to appellants of an office in the bathhouse at Desert Hot Springs, for the sale of the real property involved in the initial contract. The sixth cause of action concerns the forcible detainer of said office by L. W. Coffee. The seventh and eighth causes of action were for injunctive relief against any possessory action for said demised premises. The ninth cause of action is for real estate commissions due to appellants, as the procuring cause of a buyer ready, willing and able to purchase Block I, Tract 6. The tenth cause of action is a common count upon such facts for appellants' commissions. The eleventh cause of action concerns itself with 49 individual purchasers ready, willing and able. The twelfth cause of action is a common count and is for commissions predicated thereon. The thirteenth cause of action is for damages suffered by the withholding of property from sale, contrary to the agreement of the parties. The fourteenth cause of action is for anticipated commissions for Tract Number 7. The fifteenth cause of action is for the cost of billboards advertising the various tracts sold in the area. The sixteenth and seventeenth causes of action allege an agreement, which was to have been reduced to writing, under which the possession of the office in the bathhouse was returned to the respondents, and subsequently rescinded when such written covenant was not delivered to appellants. The eighteenth and nineteenth causes of action are for declaratory relief as to the right of occupancy of said demised premises, and the twentieth cause of action is similar to the thirteenth cause of action, which alleges additional property that should have been, but was not made available for sale under the contract.

In answer to said cross-complaint, the cross-defendants, consisting of the plaintiffs in this cause of action, and L. W. and Lillian Coffee Foundation, Inc., deny all the material allegations of the cross-complaint.

The record reflects that respondent L. W. Coffee first went to Desert Hot Springs area in Riverside County, in 1932. His first development in the area was financed under a trust arrangement by A. Wardman as beneficiary thereof. This arrangement was subsequently modified approximately one year later, whereby Mr. Coffee became the subdivider, promoter and sales agency; Mr. Wardman would put up the necessary purchase price of the property, transfer fee title to Mr. Coffee, receive no down payment, but reserved as security a promissory note and deed of trust with a release

clause for the sale of individual parcels or rights. This procedure had been followed for 20 years. Mr. Coffee had been a licensed real estate broker for a number of years.

The initial arrangement between Mr. Coffee and Mr. Wardman was that for his services Mr. Coffee would receive 50 per cent of the profits from this arrangement.

The first relationship between the parties to this appeal commenced a short time prior to October 17, 1952, when a conference was held between respondent L. W. Coffee and appellant Remer regarding the sale by her organization of the then unsold lots in the Desert Hot Springs area, which numbered 677. Following this and subsequent conferences and negotiations, on October 17, 1952, a contract was entered into. On August 7, 1953, a subsequent contract (here in question) was entered into. Prior to April 5, 1954, differences arose between appellants and respondents. Up to November, 1953, appellants had sold or caused to be sold all but 109 of the aforesaid original 677 lots. In January, 1954, there were approximately 60 scattered lots available for sale by appellants, which were being sold as many as 23 on a weekend. Mr. Coffee had indicated at the time of the execution of the second contract of August 7, 1953, that Tract 7 would be available on or before October 1, 1953. For various reasons, as found by the court, Tract 7 was never sufficiently completed so that the same was eligible for public sale. Assertedly, to ''prevent the possibility of the loss of their trained sales force'', appellants had obtained certain property in what is referred to as ''Desert Hot Springs Annex.'' Such property was being sold by appellants from the real estate tract office furnished by respondents and in the bathhouse real estate office rented by appellants from respondents. Certain billboard advertising was used to promote and exploit the public sale of such property. The final matter of controversy concerns itself with the sale of Block I, Tract 6, wherein appellants had a contemplated sale, and as hereinafter indicated, Mr. Coffee was unwilling to acquiesce therein, upon the assumption that appellants were seeking to obtain such property for their own benefit. On May 5, 1954, Mr. Coffee and Mr. Hart, one of his attorneys, together with Mr. Robinson, secretary of the Realty Company of America, Inc., Mr. Carpenter, its sales manager, and Mr. Eugene L. Wolver, attorney for said corporation, met in the office of Mr. Wolver. A lengthy discussion was had at such conference as to the aforesaid matters, at the conclusion of which it was agreed

that Attorney Hart would, in writing, make known Mr. Coffee's response thereto. On May 12, 1954, Mr. Hart sent to Mr. Wolver, his response, as follows:

"After our meeting on Wednesday, May 5, I went over all the matters we had discussed with Mr. Coffee, and made the following recommendations regarding his relations with the Realty Company of America, Inc., with which he has agreed.

"1. In regard to the development of the 80 acres by the Realty Company of America, Mr. Coffee will cooperate to the fullest, which means that the Realty Company of America can use the signs as proposed; can continue selling its property from offices furnished by Mr. Coffee; Mr. Coffee will make no derogatory remarks to any of the members of Realty Company of America, or its agents, and will in no way interfere with the sale of said property, directly or indirectly.

"2. In regard to the development of the N½ of Sec. 30 for sale by the Realty Company of America, Mr. Coffee is progressing as rapidly as his finances will allow. He feels that it is better to have the subdivision laid out in a first class manner for sale, rather than to start selling it now under bond. He feels that by waiting a far higher price will be received for the individual lots.

"In regard to the development and sale of the N½ of Sec. 30, Mr. Coffee realizes that it is necessary for the Realty Company of America to have a large staff of salesmen who are well trained and equipped in selling, and to do this, they must have something to sell.

"Mr. Coffee will cooperate in every way to see that these ideas can be followed; however, he estimates that with the summer hot month coming on, it will be fall before he is able to have the property ready for sale.

"3. In reference to Block I, Mr. Coffee consents to the sale of same to one person on condition that he is paid, in addition to the release price, the sum of $3500.00; which said sum is to be paid from the first monies received. Mr. Coffee further agrees that if the property is used in accordance with sales contract, for flat or duplex purposes, the property carries with it hot water rights.

"It is our sincere hope that in the future we can solve all our problems in an amicable manner and have informal conferences from time to time with a view toward helping one another in the development of Desert Hot Springs."

The foregoing epitomizes the general factual background

surrounding this litigation and the issues presented on this appeal.

Following trial before the court, findings were made, and predicated thereon judgment was rendered that the above mentioned contracts dated October 17, 1952, and August 7, 1953, "are null and void and wholly ineffective for any purpose whatsoever, and that the same be and hereby are rescinded, cancelled and terminated." Upon appellants' complaint filed in the original action, judgment was rendered for respondent Coffee. As to appellants' cross-complaints, judgment was entered for respondent cross-defendants therein. From such judgment this appeal is prosecuted by E. L. Remer, doing business as Realty Company of America and Realty Company of America, Inc.

Appellants first challenge the sufficiency of the evidence to support the findings upon which the judgment was predicated. ██ The function of and limitation upon an appellate tribunal in the determination of a claim of "insufficiency of the evidence" is thus enunciated in *Bedford* v. *Pacific S. W. Corp.*, 121 Cal.App. 162, 163 [8 P.2d 558]:

"It is a commonplace of appellate procedure that every intendment is to be indulged by the appellate court in favor of the trial court's findings, that only the evidence most favorable to the successful litigant is to be considered, that where divergent inferences reasonably may be drawn from the evidence that inference is to be indulged which will support the trial court's action, and that with all this in mind unless the court can say on appeal that the findings are wholly without substantial support in the evidence they cannot be disturbed. It is not sufficient that upon the same evidence the appellate court might have reached a different conclusion as triers of the facts. The burden is upon the appellant to demonstrate that as a reasonable man the trial judge could not reasonably have reached the conclusion that he did from the evidence before him."

Before proceeding to a discussion of the findings here under attack, it should be borne in mind that under the Exclusive Sales Contract, which is the subject of this action, a relationship of principal and real estate broker was created between the parties. ██ Under California law, there is imposed upon the real estate agent the same undivided service and loyalty that is imposed upon a trustee in favor of his beneficiary (*Sands* v. *Engle Oil & Refining Co.*, 83 Cal.App.2d 312, 318 [188 P.2d 782]; *Langford* v. *Thomas*,

200 Cal. 192, 197 [252 P. 602]). Section 2230 of the Civil Code charges such an agent with the duty of fullest disclosure of all material facts concerning the transaction in question that might affect the principal's decision (*Langford* v. *Thomas, supra,* p. 196; *Rattray* v. *Scudder,* 28 Cal.2d 214, 223 [169 P.2d 371, 164 A.L.R. 1356]). ■ The agent is required to exercise the highest degree of good faith toward his principal. He may not obtain for himself an advantage over the latter by misrepresentation, deceit or concealment of the essential facts of a transaction (*Bell* v. *Scudder,* 78 Cal.App.2d 448, 454 [177 P.2d 796]). ■ Unless otherwise agreed upon, an agent is burdened with the duty not to compete with his principal concerning the subject matter of the agency.

■ Appellants assail the finding that on or about May 15, 1954 they acquired the 80 acres of barren desert land for the purpose of subdividing the same and placing the land upon the market for purchase by the general public under the name of Desert Hot Springs Annex, and that the same was done for the purpose of misleading the general purchasing public, and doing irreparable injury to respondents as the original owner and subdivider in the Desert Hot Springs area, and selling said properties in competition with the Desert Hot Springs property of respondent. In support of their claims appellants assert there was evidence that they did not attempt to acquire and develop the 80 acres in question until after receipt of the letter (hereinbefore set forth and hereinafter to be considered) from the attorney for respondents. That prior to acquisition of the land there had been several conversations with respondent Coffee in which it was suggested that the latter become the purchaser and subdivider of such property. However, there is in the record testimony that respondent Coffee was advised of the purchase of the 80 acres some two weeks after a discussion between Mr. Carpenter of appellant Realty Company of America and respondent Coffee. That appellant Realty Company of America then commenced to sell the Desert Hot Springs Annex property and ceased actively selling property owned by respondents, in violation of the Exclusive Sales Contract, which is the subject of this litigation. That such sales continued after respondent Coffee complained of appellants' actions. Certain pictures were introduced into evidence showing that appellants were advertising to the public that they were the exclusive agents for respondent Coffee, when in truth and fact they were selling their own land in open competition with respondent.

■ Appellants complain of the findings that they have contacted many persons, who have theretofore purchased Desert Hot Springs property, and have urged them to trade said property for undeveloped acreage of desert land owned exclusively by appellants, that in so doing, appellants have made derogatory remarks concerning respondents regarding the future of Desert Hot Springs, and the ability of the respondent L. W. Coffee to develop Desert Hot Springs as planned; that appellants have consummated trades of certain pieces of Desert Hot Springs property for undeveloped desert acreage; that appellants have become the sole owner of Desert Hot Springs property, which they have offered for sale to members of the general buying public, in competition with the property known as Desert Hot Springs and owned by the respondents; that all of said sales and trades have been carried on in the tract office of respondents, which was made available to appellants, for the sole purpose of selling Desert Hot Springs property owned by respondents. Appellants direct our attention to evidence that the first trouble between them and respondent Coffee was over the so-called "trades." That this was within the first six months, after a half dozen such trades had been made, after which respondent Coffee objected to trades. That four months after the commencement of operations, an agreement was reached, that the respondents would let the trades to date "go through," but would thereafter be paid the release price for any lot, upon which a trade was taken. That this understanding was confirmed by the respondents' letter of February 4, 1954. That in this letter the method to be pursued thereafter, as to trades, was established in detail; the appellants being authorized therein "so long as you pay the release price of any lot in any of my tracts in Desert Hot Springs, you can make any trade that you so choose and whatever you take in is yours. . . ." That in regard to trades, the court found there was no secret profit or failure to account. That there is no evidence in the record that the appellants at any time did not pay to respondents the full release price for every lot involving a trade. But, there is evidence in the record that appellant Realty Company of America did contact parties who had contracted to purchase property from respondent Coffee in the Desert Hot Springs area for the purpose of making trades with said parties; that appellants acquired their interests in the lands which said parties had contracted to purchase from respondent; that appellant would then sell said lands in competition with respondent and in violation of the exclusive

sales agreements, and would then sell and transfer to such parties property in Desert Hot Springs annexed to property which was owned by appellant and acquired by them from A. Wardman in violation of the said exclusive sales contracts.

It would unduly prolong this already lengthy opinion to set forth in detail the contention of appellants that other findings are barren of support in the evidence. Suffice it to say that while the evidence was extremely conflicting, appellants have not met the burden imposed upon them to demonstrate that as a reasonable man, the trial judge could not reasonably have reached the conclusion that he did from the evidence before him. ■ As has been so often repeated, our duty begins and ends with a determination of whether there is in the record evidence of sufficient substantiality, contradicted, or uncontradicted, to support the conclusion reached by the duly constituted arbiter of the facts (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]). Weighed in the crucible of that rule, appellants' challenge to the sufficiency of the evidence to support the findings is unavailing.

■ Appellants next contend, "That the contents of the letter of May 12, 1954 from Respondents' attorneys, (heretofore quoted herein) should not have been disregarded, and the same is binding upon the Respondents." It is contended that the letter provided authorization for appellants (a) to proceed with the acquisition and development of the aforesaid 80 acres in the Desert Hot Springs "annex," with Mr. Coffee's fullest cooperation, and with no interference with the sale of such property, directly or indirectly by Mr. Coffee; (b) the right to use the proposed advertising signs in the sale of such property, and the continued right to sell such property from the office furnished by Mr. Coffee; (c) the discontinuation of derogatory remarks by Mr. Coffee; (d) that finances had prevented the completion of Tract 7, and that it would be advantageous to wait, so that the same could be laid out for sale, in a first class manner, and that it would be "fall" before such property would be ready for sale; (e) that by so waiting, a far higher price would be received for the undivided lots; (f) in order to sell such property when so ready, the appellants must preserve and retain "a large staff of salesmen who are well trained and equipped in selling, and to do this, they (appellants' salesmen) must have something to sell," thus the necessity for acquiring such 80 acres and any other resalable property; (g) Mr. Coffee consents and authorizes the sale to one person of Block I, Tract 6, upon

the following conditions: (1) that he be paid the release price of $12,000, and in addition, the sum of $3,500, aggregating $15,500; (2) which sum is to be paid from the first money received, and (3) if the property be used in accordance with the sales contract, or for "flat or duplex" purposes, the property carries with it hot water rights.

Appellants assert that certain findings that they placed the property on the market to respondents' "irreparable injury" and without respondents' knowledge or consent, sold the same from the office furnished by the latter, and that advertising billboard signs were used in advertising such property, are illustrative of the fact that the court disregarded the contents of the aforesaid letter. This contention of the claimed disregard for the letter is based on a portion of the trial court's "memorandum opinion," wherein it is stated, "The entire contract between the parties was properly rescinded because of completely changed conditions brought about principally by Realty. It would be inequitable to continue the contract in effect under the changed conditions.

"A dispute existed between the parties during the time of conference of Coffee and his attorney with Realty and its attorney, and much of this evidence must be discarded because it was an attempted compromise of an existing dispute."

There is no doubt that even though statements are allegedly made during a conference at which the parties were attempting to compromise their difficulties, that fact does not justify exclusion of the evidence if it was otherwise admissible (*People* v. *Union Machine Co.*, 133 Cal.App.2d 167, 173 [284 P.2d 72] ; *California Home Extension Assn.* v. *Hilborn*, 37 Cal.2d 459, 465 [235 P.2d 369]). However, in the case at bar the letter in question was not only read into the record but was introduced into evidence as an exhibit. Therefore, it cannot be said that the letter was "disregarded" by the court. The weight to be given this evidence was within the province of the trial court. The record is replete with statements concerning various meetings between the parties and their counsel referred to by appellants' counsel as "for the laudable purpose of trying to adjust this matter preventing litigation. I think both he (respondents' counsel) and I concurred in the theory that an amicable settlement is preferable to litigious conduct." Also, the evidentiary value of the letter in question was merely cumulative and corroborative of other testimony offered by appellants, which the court rejected in favor of conflicting testimony adduced in behalf of respondents. While the court did say with regard to the letter

"much of this evidence must be discarded because it was an attempted compromise of an existing dispute," kindred evidence was received in other forms, and as heretofore pointed out, it was within the exclusive province of the trier of facts to disbelieve testimony which appeared to him to lack verity, and to base his findings upon contrary testimony deemed worthy of credence.

For the first time on appeal, appellants contend that a judgment of rescission should not have been rendered because of the absence of essential elements to sustain such a judgment. In this regard it is first contended that there was no notice of rescission as to the contract of October 17, 1952, and that the only notice of rescission alleged or proven herein pertains solely to the subsequent agreement of August 7, 1953. That in its judgment the trial court decreed the rescission of both contracts.

With this contention we cannot agree. In the primary or original of the two actions now engaging our attention, reference is made to the contract of October 17, 1952, entitled "Exclusive Sales Contract," and the prayer of said complaint petitions for rescission and cancellation of this contract as well as the contract of August 7, 1953. Furthermore, in their answer to this complaint, appellants prayed the court to declare "That certain Exclusive Sales Agency Contract dated October 17, 1952, . . . valid, binding, enforceable and legal between the parties hereto."

Appellants further urge a noncompliance with the provisions of section 1691 of the Civil Code in that respondents made no offer to restore to appellants any benefits received by the former from the latter as a result of the transaction (*Williams* v. *Smith*, 127 Cal.App.2d 607, 612 [274 P.2d 204] ; *Crosswell* v. *Eckels*, 101 Cal.App.2d 271, 273 [225 P.2d 663] ; *Clanton* v. *Clanton*, 52 Cal.App.2d 550, 557 [126 P.2d 639] ). Appellants do not direct our attention to what respondents could have restored to appellants or what the former could have offered to restore. The complaint herein filed by respondents constituted an action in equity.

In actions in equity there are certain exceptions to the general rule enunciated by section 1691 of the Civil Code (*Kelley* v. *Owens*, 120 Cal. 502, 510 [47 P. 369, 52 P. 797] ).

In the case at bar, since it appears respondents received nothing which could be restored, the institution of the suit was sufficient notice of a rescission in a case such as this. And, where, as here, we are concerned with an equity case,

and no legal prejudice to appellants could have resulted, the rule concerning the filing of the action as being sufficient notice of rescission is especially true.

It is true as urged by appellants that fraud, unproductive of injury will not justify a rescission nor support an action either for rescission or damages (*Cutler* v. *Bowen,* 10 Cal.App. 2d 31, 36 [51 P.2d 164]; *Darrow* v. *Houlihan,* 205 Cal. 771, 774 [272 P. 1049]). In the instant case the record is replete with testimony not only of fraud but of resultant injury. For instance, there is testimony that after cancellations of sales made by appellants they failed to disclose to respondents such cancellations and return of the property; that appellants did not place said property upon the market for sale, or make such property again available for sale. Had this been done respondents would have been apprised of the fact that appellants had wrongfully retained moneys received from such cancellations.

There is also evidence that appellants retained said sums. As heretofore pointed out, there is evidence that respondents were damaged by appellants' conduct in the sale of lands in competition with respondents and in violation of the exclusive sales agreements. Other evidence of injury to respondent appears in the record, some of which is heretofore set forth herein. To us, it appears that appellants' contention as to the absence of actual injury or detriment to respondents by reason of the conduct and actions of the former, lacks substance.

Appellants next urge that claimed contradictory findings require a reversal of the judgment. The pleadings and the issues presented by the consolidated cases herein are varied and complex. First, there was the complaint in the original action filed by appellants herein for declaratory relief and the answer thereto. Then, there was the complaint filed by respondents for rescission of the exclusive agency contracts, accounting and damages. There is the answer thereto and cross-complaint by appellants herein for declaratory relief, injunction, money due, indebitatus assumpsit and damages. Then respondents' answer thereto, followed by an amended and supplemental cross-complaint filed by appellants. The complexity of the issues framed by these pleadings and raised by the evidence is manifest from the evidentiary features of the case above narrated. In framing the lengthy findings made herein, the court below, except in two instances, adopted a formula, of which the following is typical: "That all of the allegations contained in Paragraph 1 of first cause of action

of the complaint are true and correct." "That all of the allegations of paragraph II of the fifth cause of action of said complaint are true and correct, except it is not true that defendants have retained all sums designated as reserve deposits as their sole and exclusive property, and have failed at all times to account to plaintiffs for any of said sums." "That all the allegations set forth in paragraph III of answer to first cause of action of said complaint are untrue. That *this finding is binding in this action only and may be retried in another action pending between these parties.*" (Emphasis added.) As to all other paragraphs of the answer the finding was simply that "the allegations thereof are untrue." In the findings on the cross-complaint and answer thereto the same system was adopted, except as to paragraph VII of the first cause of action, with reference to which the finding reads that all of the allegations thereof "are untrue. That this finding is binding in this action only and may be tried in another action pending between these parties." The foregoing method adopted by the court in making findings necessitates an examination of all the pleadings as well as the evidence adduced at the trial. Aided by such an examination and viewing the findings in their entirety, which we are required to do, we are satisfied that it cannot justly be said that they are so contradictory as not to justify the conclusions of law drawn therefrom, or the judgment rendered thereon except as hereinafter set forth.

 Appellants next complain that the findings do not justify nor support the provision in the judgment that the contracts between the parties, "Are null and void and *wholly ineffectual for any purpose whatsoever.*" (Emphasis added.) The italicized portion of the judgment is not in keeping with, and is repugnant to the purposes and intent of the specific findings, wherein the court, as indicated in our discussion of the findings, limited the effect thereof to the *within action.* The contract between the parties dated October 17, 1952, contained a *proviso* ". . . That no termination shall effect or release any monies or other consideration to which First Party shall be entitled under the terms hereof." The record bears out appellants' contention that the aforesaid italicized provision of the judgment ". . . could well be deemed to preclude any recovery upon such contract, a situation *which both court and counsel sought to avoid, during the trial herein.*

"*Prior to the trial of the within cause, another action had been filed, and was pending at the time of the trial hereof, and*

*both parties sought not to prejudice such action, which is for commissions earned by the Appellants, prior to any notice of termination of their agency."* (Emphasis added.) That the court did not intend the judgment herein to affect the other action for commissions is implicit in the findings made. The judgment should therefore be modified to exempt therefrom the other action for real estate commissions, which was pending at the time of the trial with which we are here concerned, and which it was stipulated should not be affected by the judgment herein.

Finally, appellants urge that the trial court abused its discretion in not granting their motion for a new trial. The motion for a new trial was principally predicated upon affidavits. Those of A. Wardman and Bradford Cook would tend to impeach the testimony of respondent L. W. Coffee with reference to the holding of the trial judge in his "Memorandum Opinion" that the contract between the parties hereto was properly rescinded because of *"completely changed conditions* brought about principally by Realty (appellants)." (Emphasis added.) It is urged that the foregoing affidavits "indicate that such 'completely changed conditions' were the result solely by the conduct of said L. W. Coffee, and the insistence of A. Wardman that the Realty Company of America, Inc. would not alter its sales campaign and sales force in the Desert Hot Springs area." Appellants contend that the contents of these affidavits constituted "newly discovered evidence, material for the moving party herein, which could not have been discovered or produced with reasonable diligence at the trial of the captioned cause."

Appellants concede the rule to be as stated in *Estate of Emerson,* 170 Cal. 81, 82 [148 P. 523], that ". . . the courts look with distrust and disfavor upon motions for new trials based on the ground of newly discovered evidence, that such motions should not be granted by trial courts unless the new evidence is such as to make it reasonably probable that it would change the result upon another trial, that the moving party must state in his affidavits facts which show that he exercised reasonable diligence from the beginning in endeavoring to discover the evidence before the first trial, that the decision of these questions rests in the sound discretion of the trial court and that its decision will not be reversed on appeal unless an abuse of that discretion clearly appears." (See also *Monnette* v. *Title Ins. etc. Co.,* 107 Cal.App. 313, 324 [290 P. 668] ; *Vertson* v. *Los Angeles,* 116 Cal.App. 114, 120 [2 P.2d

411]; *Bradbury Estate Co.* v. *Carroll*, 98 Cal.App. 145, 154 [276 P. 394]; *Laverne* v. *Dold*, 17 Cal.App.2d 180, 183 [61 P.2d 497]; *Carvalho* v. *Lusardi*, 114 Cal.App.2d 733, 737 [251 P.2d 37].) However, appellants, as shown by the affidavit of their counsel, admit that on October 7, 1955, when negotiations for a settlement seemed "improbable" and that the matter would proceed to trial, appellants' counsel sought to obtain the testimony of A. Wardman at the trial of the instant causes, "and for the first time, learned and ascertained that said A. WARDMAN was not in the State of California or the United States, but was on a world wide tour, and could not either be contacted nor could his whereabouts be ascertained for the taking of a deposition. That by reason of the fact that said A. WARDMAN was constantly traveling, his deposition could not be taken, and affiant did not have any information, knowledge or belief as to what his testimony would be, so that interrogatories for a written deposition could be prepared or that the same could be stated in any affidavit for continuance or otherwise. That said A. WARDMAN did not return to the United States or the State of California from said trip until the 14th day of December, 1955, and by reason thereof, affiant was unable to cause said witness to be subpoenaed, or his testimony to be otherwise produced on behalf of affiant's clients.

"That until the preparation of the affidavit of A. WARDMAN, filed contemporaneously herewith, affiant did not have any information, knowledge or belief that BRADFORD COOK had had any discussion with MR. L. W. COFFEE, or could testify in the manner and as to the facts more fully set forth in the affidavit of BRADFORD COOK, filed contemporaneously herewith."

In the case at bar, we are confronted with the fact, as was the trial judge, that on November 15, 1955, when the consolidated cases were called for trial, appellants' counsel answered "Ready," although, according to counsel's affidavit, he was aware of the absence of Mr. Wardman from the United States on October 7, 1955, more than a month prior to the date of trial. Hence, it is not strictly newly discovered evidence, and it is not claimed that any application was made to postpone the trial nor to give a further opportunity to discover Mr. Wardman's whereabouts and secure his attendance or deposition. Having failed so to do it must be held that appellants entered upon the trial at their peril (*Broads* v. *Mead*, 159 Cal. 765, 768 [116 P. 46, Ann. Cas. 1912C 1125];

*Scanlan* v. *San Francisco etc. Ry. Co.*, 128 Cal. 586, 589 [61 P. 271]). It is also significant that at no time prior to the signing of findings of fact, conclusions of law and entry of judgment, did appellants make any motion to reopen the case so that the court might hear the testimony of both Mr. Wardman and Mr. Cook. The affidavit of appellants' counsel shows that Mr. Wardman returned to the United States on December 14, 1955, while the findings of fact, conclusions of law and judgment were not signed until April 26, 1956. We are satisfied that appellants have not met the burden resting upon them to show an abuse of discretion by the trial court in denying their motion for a new trial upon the ground urged therefor.

For the reasons herein stated, the judgment is modified by adding thereto, at the end of the paragraph designated I, and following the words, "rescinded, cancelled and terminated," the words, "but without prejudice to an action now pending in this Court between the parties hereto involving commissions allegedly earned by defendant E. L. Remer doing business as Realty Company of America, and Realty Company of America, Inc., a California corporation." As so modified, the judgment is affirmed. The parties will bear their respective costs on appeal.

Fourt, J., and Drapeau, J.,* concurred.

An application to augment the record on appeal and a petition for a rehearing were denied June 4, 1958. Appellants' petition for a hearing by the Supreme Court was denied July 2, 1958.

---

*Assigned by Chairman of Judicial Council.