[Civ. No. 24968. First Dist., Div. One. Feb. 27, 1969.]

JACK R. DAVIDSON et al., Cross-complainants and Appellants, v. VANCEL S. WELCH, Cross-defendant and Respondent.

Bell & Cox and Charles R. Bell for Cross-complainants and Appellants.

Leo M. Cook for Cross-defendant and Respondent.

SIMS, J.—In this action for declaratory relief, an employer-lessee appeals from a judgment which denied it indemnification from an employee-lessor for damages granted a customer for an intentional tort inflicted by the employee on the customer in the course of his employment, and which ordered it to indemnify and save harmless the employee-lessor.[1] The employer contends that it was only vicariously liable for the act of the employee, and therefore was entitled to indemnity from him; that no exculpation of the employee's duty to indemnify the employer can be found in a fair construction of the parties' written contract; that the trial court's construction of the contract to require indemnification against wilful personal liability was against both the evidence and the law; and that there is no evidence of any other agreement or circumstances that could obligate the employer to indemnify the employee against his liability for the wilful personal injury.

---

[1] According to the parties, the employer-lessee's insurer has paid the $10,000 judgment obtained by the victim.

 An examination of the legal principles applicable to the singular relationship entered into between the parties to this case leads to the conclusion that although the employee would generally be liable to indemnify his employer for the vicarious liability imposed upon the latter, the particular contract entered into between the parties in this case, when construed in the light of their relationship at the time they entered into it, required the employer to provide for the employee's indemnification, and, as so construed, is not against public policy. The judgment must be affirmed.

*The Facts*

In August 1963, Vancel L. Welch, the cross-defendant and respondent who is referred to as the employee-lessor owned, with his wife, a garage premises in which he conducted a paint and body shop. As a result of negotiations, which are more particularly detailed below, on August 23, 1963, he entered into a lease and employment agreement with Arrow Chevrolet, a limited partnership.

On July 31, 1964, one Shoberg, who had a car in the shop for extensive repairs, and Welch, who was working in the shop, got into an altercation concerning the removal of the car from the premises. In January 1965, Shoberg filed suit against Arrow and Welch to recover damages for injuries resulting from an alleged assault by Welch the previous July. In a first cause of action he alleged that Arrow was negligent in hiring Welch because it knew he was an individual of known pugnacious, vicious and dangerous temperament, and in a second cause of action he alleged that Arrow had ratified the conduct of its employee. He sought general and special damages against both Arrow and Welch, and punitive damages against Welch. The incident had been reported to Arrow's liability insurer. After the institution of the action the insurer refused the demand of Welch's attorney that it undertake his defense. Welch's answer admitted his employment, and that the premises were under the control of Arrow. He denied the injury and damages, and affirmatively alleged that he acted in self-defense. Arrow's answer admitted Welch's employment and its operation of the premises. It further alleged that the victim negligently provoked and wrongfully assaulted Welch.

Arrow also filed a cross-complaint in declaratory relief seeking indemnity from Welch for the cost of defending the suit.

and for any damages which might be assessed.[2] By his amended answer to the cross-complaint, Welch denied any liability to Arrow and claimed a right to indemnity, first as arising out of his employment because he allegedly acted on his employer's behalf, and, second, under the terms of the lease and employment agreement.

The issues raised by the original complaint and those raised by the cross-complaint were severed for trial by the pretrial order. The latter issues were tried and a decision in favor of Welch was ordered by one judge prior to the trial, before a second judge, of the merits of the victim's claim. The latter trial resulted in a verdict and judgment which awarded the victim $10,000 from Welch and Arrow, and denied him any punitive damages. Settlement of the findings on the indemnity phase of the action had been delayed until after the trial on the tort claim. In its ultimate findings the court purported to take judicial notice of the other proceedings. It is, therefore, appropriate to consider the portion of the reporter's transcript of the tort action which Arrow requested, and which, without objection, has been made part of the record of this appeal. From this record it appears that the victim abandoned any claim that Arrow itself was negligent. Arrow conceded that whatever dispute occurred was job-concerned, and that it was liable whether Welch's acts were negligent or intentional. The case was thereupon submitted to the jury on the sole issue of whether Welch acted in self-defense. The jury was advised by the form of the verdict, and in response to an express question, that Arrow would be jointly liable for any compensatory damages assessed against Welch.

The uncontradicted evidence at the indemnity trial demonstrated that Arrow never authorized or ratified the use of physical force against its customer by Welch.

*The employer's right to indemnity*

In its findings the trial court recognized that one of the two principal contentions of Arrow was that the employee owed his employer a duty to indemnify and hold the latter harmless from ''all expenses, costs of suit, legal fees, damages,

---

[2]Davidson was sued individually and answered on his own behalf and as a partner of Arrow Chevrolet. The cross-complaint was in the name of the general and limited partners. For convenience their interests are referred to as ''Arrow'' or the employer-lessee. The propriety of filing a cross-complaint in declaratory relief for indemnity is well recognized. (*Lewis Ave. Parent Teachers' Assn.* v. *Hussey* (1967) 250 Cal.App.2d 232, 235 [58 Cal.Rptr. 499]; *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 78-79 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].)

judgments, or other claims or awards.'' The court concluded that Arrow did not establish this contention by a preponderance of the evidence. The employer-lessee objected to these findings. Insofar as there is implicit in the court's findings a conclusion that, irrespective of the agreement, the employer was not entitled to indemnity, the findings and conclusions are erroneous.

■ ''Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe (*Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 173 [231 P.2d 484] ; *Bradley* v. *Rosenthal* (1908) 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171] ; *Johnston* v. *City of San Fernando* (1939) 35 Cal.App. 2d 244, 246 [95 P.2d 147] ; *Myers* v. *Tranquility Irr. Dist.* (1938) 26 Cal.App.2d 385, 389 [79 P.2d 419] ; *Ledgerwood* v. *Ledgerwood* (1931) 114 Cal.App. 538, 542-543 [300 P. 144] ; Rest., Restitution, 418-419, § 96 ; 35 Am.Jur. 530-531, § 101 ; 56 C.J.S. 502, § 79 ; see also *Aynes* v. *Winans* (1948) 33 Cal. 2d 206, 208-209 [200 P.2d 533] ) ; that is, as between employer and employe in such a situation, the obligation of the employe is primary and that of the employer secondary.'' (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 428-429 [296 P.2d 801]. In addition to the authorities cited, see Lab. Code, § 2865 ; *Lewis Ave. Parent Teachers' Assn.* v. *Hussey* (1967) 250 Cal.App.2d 232, 236 [58 Cal.Rptr. 499] ; *Aerojet General Corp.* v. *D. Zelinsky & Sons* (1967) 249 Cal. App.2d 604, 611 [57 Cal.Rptr. 701] ; *Herrerro* v. *Atkinson* (1964) 227 Cal.App.2d 69, 77 [38 Cal.Rptr. 490, 8 A.L.R.3d 629] ; *Walsh* v. *Hooker & Fay* (1963) 212 Cal.App.2d 450, 462 [28 Cal.Rptr. 16] ; Rest., Agency, § 901, p. 239, particularly Comment d, pp. 239-240 ; and 1 Witkin, Summary of Cal. Law (1960) Agency and Employment, § 32, par. e, p. 411. Cf. *Cox* v. *Certified Grocers of Cal. Ltd.* (1964) 224 Cal.App.2d 26, 31 [36 Cal.Rptr. 48] ; *Spruce* v. *Wellman* (1950) 98 Cal.App.2d 158, 161 [219 P.2d 472] ; and *Davison* v. *Diamond Match Co.* (1935) 10 Cal.App.2d 218, 222 [51 P.2d 452].)

■ It is recognized that the right to indemnity which is implied from the relationship of the parties may be lost if the indemnitee is himself guilty of serious wrongful conduct. (See Rest., Restitution, § 88, subd. b, p. 394 and Comment, pp. 395-396 ; *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal. 2d 40 [41 Cal.Rptr. 73, 396 P.2d 377], 44 ; *Bradley* v. *Rosenthal, supra,* 154 Cal. 420, 426-427 ; *Lewis Ave. Parent Teachers' Assn.* v. *Hussey, supra,* 250 Cal.App.2d 232, 236 ;

*Aerojet General Corp.* v. *D. Zelinksy & Sons, supra,* 249 Cal. App.2d 604, 608; *Herrerro* v. *Atkinson, supra,* 227 Cal.App.2d 69, 74; and *Davison* v. *Diamond Match Co., supra,* 10 Cal. App.2d 218, 221-222; and Witkin, *op. cit.,* § 66, pp. 438-439.)

In this case the original complaint charged the employer with negligence in hiring the employee, but as has been observed, this cause of action was not submitted to the jury, and the liability of the company was predicated solely on the vicarious liability of an employer for the tort of his employee. The mere allegations of the victim's complaint cannot establish the employer's independent negligence. (See *Bradley* v. *Rosenthal, supra;* and *Lewis Ave. Parent Teachers' Assn.* v. *Hussey, supra.*) Moreover, the evidence in the indemnity action establishes that the employer never authorized or ratified the violent action of the employee. (See *Davison* v. *Diamond Match Co., supra.*)

The employee relies upon the principle expressed in Labor Code section 2802, as follows: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful." (See also Rest., Agency, §§ 438-440, pp. 332-333, and § 440 subd. a, and Comment b, p. 335; and Witkin, *op. cit.,* § 35, par. a, p. 413. Cf. § 401, comment d, *supra.*) He fails to distinguish between tortious conduct which is expressly or impliedly authorized by the employer, and that which is not. "Liability under the doctrine of respondeat superior extends to malicious acts and other intentional torts of an employee within the scope of his employment." (Witkin, *op. cit.,* § 76, p. 450, and see §§ 77-78, pp. 451-453.) The scope of the employment, which measures the employer's responsibility for the conduct of his employee in relation to third persons, is a broader concept than the scope of the employee's actual authority which measures the employee's responsibility to his employer. On the facts of this case the use of physical force by the employee was not authorized, and as ultimately determined, neither was it justified.[3] Therefore, in the absence of an agreement to the

---

[3] No opinion is expressed upon the liability of the employer to indemnify the employee for the expense of defending the tort action if the facts were resolved in favor of the employee's contention that he was unwarrantedly attacked and was acting in self-defense. The Restatement of Agency, section 439, subdivision d, page 329, suggests that the employer would be subject to a duty to exonerate the employee.

contrary, the employee, under the principle first enunciated, would be liable to indemnify his employer for damages the latter suffered by reason of the former's tortious conduct toward a third person.

## The scope of the agreement

Prior to the execution of the agreement dated August 23, 1963, Davidson drew up a contract and presented it to Welch. This contract, which was never executed, provided for the rental of the premises and certain equipment, and their use, under the management and supervision of Welch, as a paint and body department for Arrow Chevrolet. The payments to be made by Arrow, and the terms on which the shop was to be operated, were set forth in detail. Welch, as lessor, was to carry the fire insurance on the premises and name Arrow as an additional insured. Arrow was to cover fire and theft insurance on the equipment. Arrow's liability insurance was to be extended to cover Welch with respect to two wrecker vehicles.

The proposed contract contained no reference to general liability insurance. At the time, Welch had a comprehensive personal liability supplement for which a renewal policy had been issued effective from September 15, 1963. In the discussions, Davidson suggested that each carry his own liability insurance. The agreement was shown to and discussed with Welch's insurance agent. He advised them that they should not have double coverage, and that they should go to a lawyer and have a legal agreement prepared.

The parties did go to an attorney who at their joint request drew up a formal agreement which embodied the terms of the original proposal, and also included a clause reading as follows: "This lease is made upon the express condition that Lessor is to be free from all liability claimed for damage by reason of any injury to any person or persons, including Lessee, from any cause or causes while in or upon the demised premises, or in any way connected with the said demised premises, improvements, or personal property as contained thereon. Lessee hereby covenants and agrees and indemnifies and saves harmless for all liability, loss, costs, or obligations on account of or arising out of any injury or losses however occurring. Lessee agrees to carry liability insurance covering the grounds or premises leased hereunder in sums agreeable to Lessor."

Neither Davidson nor the attorney had any recollection concerning a discussion of this clause. According to Welch, it

was agreed that Davidson would furnish liability insurance which would cover Welch and the other employees on the job, and Welch would cancel his. There was no discussion relating to the consequences if Welch should strike someone, or defend himself from attack. Welch testified that Davidson advised him, and caused his insurance company to send a confirming letter, that liability insurance had been obtained as requested by clause 10; and that he cancelled his garage liability policies. Davidson testified that he did not know what insurance Welch had, and that he never required or advised Welch to cancel any insurance.

The foregoing parol evidence was admitted over the objection of the employer-lessee. The court found that the agreement included the clause set forth above, and added: "It was the intention and agreement of the parties, namely Arrow and Welch, that Welch both as a lessor and as an employee was to be free from all liability claimed for damages by reason of any injury to any person from any cause while on or in the leased premises, and that Arrow intended and agreed to indemnify and save Welch harmless both as a lessor and as an employee from all liability, loss, costs, or obligations arising out of any injury to any third person while upon or in the leased premises. That the parties also intended and agreed that Arrow would carry liability insurance covering the grounds or premises leased in an amount agreeable to Welch and which would cover Welch both as a lessor and as an employee. It was the intention of the parties that the indemnification and save harmless obligations of Arrow to Welch and that Welch was to be free from liability claims by reason of personal injuries to third persons, would apply as to acts committed or allegedly committed by Welch either as lessor of Arrow or as an employee of Arrow and whether the same were alleged to be negligent or intentional. That it was also the intention of the parties that the public liability insurance to be carried by Arrow covering the grounds and premises leased should apply to and cover Welch either as a lessor or as an employee of Arrow and whether or not his acts in such capacities were negligent or intentional."

In addition, the court made evidentiary findings in accordance with the testimony of Welch as set forth above, and conclusionary findings which rejected the contention of Arrow that the obligations assumed by the employer-lessee did not apply to the intentional acts of Welch. The clerk's transcript reflects that the employer-lessee objected to each and every

one of these findings, and that it also requested special findings which have not been made part of the record.

The employer-lessee relies upon the provisions of the parol evidence rule, and the general principle that an agreement to indemnify a party from his own negligence must be clearly expressed. In *Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, the court stated: ''Although the cases have held that one may provide agreement for indemnification against his own negligence [citations], the agreement for indemnification must be clear and explicit; the agreement must be strictly construed against the indemnitee. [Fn. omitted.] In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. And the extent of the purported indemnitor's liability must be determined from an objective assessment of the language of the instrument.'' (62 Cal.2d at p. 44. See also *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129]; *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 414-415 [340 P.2d 604]; *Whitmire* v. *H. K. Ferguson Co.* (1960) 261 Cal.App.2d 594, 599-601 [68 Cal.Rptr. 78]; *John E. Branagh & Sons* v. *Witcosky* (1966) 242 Cal.App.2d 835, 839 [51 Cal.Rptr. 844]; and *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 572 [46 Cal.Rptr. 421]. Cf. *Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786, 792 [36 Cal.Rptr.150]; *Barkett* v. *Brucato* (1953) 122 Cal.App.2d 264, 275-278 [264 P.2d 978]; and *Butt* v. *Bertola* (1952) 110 Cal.App.2d 128, 138-140 [242 P.2d 32].)

In *Goldman,* the court further observed, ''Since we hold that the obligation to indemnify a party against his own negligence will not be imposed in this case in the absence of language which itself compels such a result, parol evidence as to the intent of the parties would not effectuate such liability.'' (62 Cal.2d at p. 44.) The foregoing passages would be controlling if the agreement involved were solely a lease. It could readily be concluded that the clause was intended to cover the lessor's liability as lessor, and not to give him comprehensive indemnity for his personal liability for actions which were not directly related to his status as property owner and landlord. The agreement, however, is not a mere

lease. It denominates Welch and his wife as ''Lessor,'' but after the first 11 clauses which deal with the lease of the premises and equipment, it defines the respective rights and obligations of the employer-lessee and employee-lessor with respect to the former's employment. It recites, ''12. As a material part of this within Lease Agreement, it is understood and agreed between Lessor and Lessee hereunder that Lessee shall hire Vancel S. Welch as an employee to manage and supervise the paint and body department of Lessee, to be conducted upon the premises leased hereunder.'' The remaining clauses fix the employee-lessor's compensation for his services, with a profit sharing arrangement, define the manner in which the business is to be conducted, and fix the term of the agreement.

Under recently elucidated rules of interpretation the court properly received extrinsic evidence of the situation of the parties. ■ ''In order to determine initially whether the terms of *any written instrument* are clear, definite and free from ambiguity and the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous.'' (*Estate of Russell* (1968) 69 Cal.2d 200, 208-209 [70 Cal.Rptr. 561, 444 P.2d 353]. See also *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 36-40 [69 Cal.Rptr. 561, 442 P.2d 641]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521-522 [67 Cal.Rptr. 761, 439 P.2d 889]; *Materson* v. *Sine* (1968) 68 Cal.2d 222, 225-231 [65 Cal.Rptr. 545, 436 P.2d 561]; and *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 864-865 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ There is no substantial conflict in the evidence concerning the circumstances under which the contract was negotiated and executed. ■ This court is, therefore, to be guided by the following canons of review: ''An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citation], or a determination has been made upon incompetent evidence [citation]. Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.'' (*Estate of Platt* (1942) 21

Cal.2d 343, 352 [131 P.2d 825]. *Accord: United States Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; *Estate of Russell, supra,* 69 Cal.2d 200, 213; *Markley* v. *Beagle, supra,* 66 Cal.2d 951, 962; and *Parsons* v. *Bristol Dev. Co., supra,* 62 Cal.2d 861, 865-866.)

▪ The evidence demonstrates that the employee-lessor was giving up his individually owned and managed paint and body shop to become the supervising manager of a department of the employer-lessee's business which would be conducted on the same premises. For all ostensible purposes his activities would continue the same as before. The testimony shows that it was intended that only one liability policy was to be in force. It is reasonable to conclude that this policy was to cover the employee-lessor as he was covered before, not only as owner, now lessor, of the premises. but also for liabilities to which he would be subjected as the operator. albeit as an employee of another, of the business conducted thereon. An independent determination of the meaning of the contract does not indicate that the trial court's interpretation of the agreement, as quoted from the findings, was erroneous. (See *Parsons* v. *Bristol Dev. Co., supra,* at p. 866.)

Since the parties expressly contracted with respect to the employer-lessee's duty to indemnify the employee-lessor, the extent of that duty must be determined by that contract, and not by the usual rules of implied indemnity, first discussed, governing the relationship of employer and employee. (See *Markley* v. *Beagle, supra,* at p. 961.)

*The legality of the agreement*

Arrow contends that if the agreement purports to indemnify the employee-lessor (or remove the employer-lessee's implied right to indemnity) for liability incurred on account of the employee's intentional unauthorized tortious acts, it is void as against public policy, as expressed in Civil Code section 1668[4] and Insurance Code section 533.[5] Alternatively, it urges that even if it had furnished comprehensive insurance covering Welch's liability for his personal acts or

---

[4]Civil Code section 1668 provides: ''All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.''

[5]Insurance Code section 533 provides: ''An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.''

omissions, as well as the liability he might incur as a landlord, such insurance would not cover an intentional tort.

■ "A 'wilful act' as used in this statute [Ins. Code, § 533] connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence. [Citations.]" (*Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83, 96 [330 P.2d 432]. See also *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 277, fn. 16 [54 Cal.Rptr. 105, 419 P.2d 168] and text quoted below; *Capachi* v. *Glens Falls Ins. Co.* (1963) 215 Cal.App.2d Supp. 843, 848 [30 Cal.Rptr. 323]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665]; and see *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 615 [29 Cal.Rptr. 586].)

■ In *Capachi, supra,* the court indicated, ". . . the word 'wilful' as used . . . [in § 533] may be said to connote an act done with malevolence, as distinguished from an act motivated by good intentions but founded in negligence." (215 Cal.App. 2d Supp. at p. 849.) In *Maxon, supra,* the court observed, "Malice imports willfulness; and, accordingly, in our opinion, is a 'willful act' within the meaning of section 533." (214 Cal.App.2d at p. 616.)

Similar considerations apply in the determination of what contracts are prohibited under the provisions of section 1668 of the Civil Code. "The public policy codified in section 1668 . . . does not purport to prohibit the parties to a contract from agreeing that one of them shall maintain fire insurance and apply the proceeds therefrom toward the reimbursement of any fire loss covered by such insurance, although caused by the other's negligence. [Citations, including Ins. Code, § 533.]" (*Fred A. Chapin Lbr. Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 616 [11 Cal.Rptr. 634].)

In *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, the court recognized that the public policy expressed in the foregoing code sections would preclude indemnification for liability arising from a wilful act of the insured. (65 Cal.2d at p. 277.) It distinguished, however, between the duty to defend the insured, and the duty to indemnify if it were finally determined that there was liability and that it was predicated upon such an act (*id.*). The court observed that the complaint, which alleged that the insured "wilfully, maliciously, brutally and intentionally assaulted" the victim, ". . . clearly

presented the possibility that he might obtain damages that were covered by the indemnity provisions of the policy. Even conduct that is traditionally classified as 'intentional' or 'wilful' has been held to fall within indemnification coverage [Fn. omitted]. Moreover, despite Jones' pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, plaintiff might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct. Thus, even accepting the insurer's premise that it had no obligation to defend actions seeking damages not within the *indemnification coverage*, we find, upon proper measurement of the third party action against the insurer's liability to indemnify, it should have defended because the loss could have fallen within that liability." (*Id.*, p. 277. See also *Lowell* v. *Maryland Cas. Co.* (1966) 65 Cal.2d 298, 301-302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Tomerlin* v. *Canadian Indem. Co.* (1964) 61 Cal.2d 638, 647 [39 Cal.Rptr. 731, 394 P.2d 571]; *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327-328 [43 Cal.Rptr. 542]; *Capachi* v. *Glens Falls Ins. Co., supra,* 215 Cal.App.2d Supp. 843, 846-849; *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 781-784; *Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal.App.2d 524, 529 [343 P.2d 311]; *Russ-Field Corp.* v. *Underwriters at Lloyd's, supra,* 164 Cal.App.2d 83, 96-97; *Ritchie* v. *Anchor Cas. Co.* (1955) 135 Cal.App.2d 245, 250-255 [286 P.2d 1000]. Cf. *Maxon* v. *Security Ins. Co., supra,* 214 Cal.App.2d 603, 614-617; and *Abbott* v. *Western Nat. Indem. Co.* (1958) 165 Cal. App.2d 302, 305 [331 P.2d 997]; and see *Arenson* v. *National Auto. & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 84 [286 P.2d 816].)

It is sometimes generally stated "that an insurer's obligation to defend is measured by the terms of the policy and the pleading of the claimant who sues the insured." (*Maxon* v. *Security Ins. Co., supra,* at pp. 618-619, and see cases collected pp. 616-617; *Walters* v. *American Ins. Co., supra,* at p. 785.) ██ *Gray* makes it clear that the bare allegations of the claimant's complaint do not control. If the broad charge made, which claims an intentional or wilful tortious act, contains within it the potentiality of a judgment based upon nonintentional conduct, the indemnitor becomes liable to defend. (65 Cal.2d at pp. 275-277.)

 The second cause of action in the tort suit alleged that Welch ''without cause or provocation on the part of Plaintiff, wrongfully, unlawfully and violently, and with malice toward Plaintiff, did assault Plaintiff and repeatedly struck and beat Plaintiff about the face and head.'' It may be assumed that public policy would bar indemnification of liability arising from such circumstances. (Civ. Code, § 1668; Ins. Code, § 533; *Maxon* v. *Security Ins. Co., supra,* 214 Cal. App.2d 603, 615; *Abbott* v. *Western Nat. Indem. Co., supra,* 165 Cal.App.2d 302, 305; and see *Arenson* v. *National Auto. & Cas. Ins. Co., supra,* 45 Cal.2d 81, 84.) The complaint, however, had the potential of liability for unintentional conduct. This was recognized in the answers filed by the respective parties to this controversy. The employee alleged that the claimant attacked him without cause or provocation and that he acted in self-defense and only used reasonable force. The employer alleged that the claimant negligently, carelessly and recklessly provoked Welch, and that he himself wilfully, wrongfully and unlawfully assaulted the employee, and by his own conduct consented to the use of force against his person.

 It cannot be determined from the verdict of the jury whether it was arrived at on the theory that the employee was not acting in self-defense and committed an unprovoked assault on the customer, or on the premise that although he believed he was acting in self-defense such belief was not reasonable, or because, although the employee could reasonably believe he was entitled to act in self-defense, he used excessive force. (See *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, 279.) All of these elements were left to the jury by the instructions of the court in the tort trial.[6] The employee-

---

[6] The instructions read in part: ''As I have indicated to you before the argument the key to this case and to your verdict will be in the decision of whether or not Mr. Welch was acting in self defense. It is undisputed, of course, that Mr. Shoberg was injured as a result of being hit or pushed by Mr. Welch. Accordingly, Mr. Shoberg would be entitled to a verdict in his favor, unless you believe that it is more likely than not that such act of Mr. Welch's was in self defense. On the other hand, if you believe that it is more likely than not that Mr. Welch was not acting in self defense, or if you are unable to say whether it is more likely that he was acting in self defense than that he was not, then your verdict in both cases should be for Mr. Shoberg. . . . In connection with this self defense concept, Mr. Welch was entitled to use reasonable force to prevent Mr. Shoberg from hitting him. If a reasonable person would have believed, and if Mr. Welch did believe, that Mr. Shoberg was threatening to strike Mr. Welch, then Mr. Welch could use the amount of force which he believed reasonably necessary to prevent it, provided that the force used did not exceed that which would seem necessary to a reasonable person in the same or similar circumstances.''

lessor urges that the failure of the jury to return any punitive damages against him demonstrates that his actions were not wilful within the connotation of public policy which bars indemnity. (See *Capachi* v. *Glens Falls Ins. Co., supra,* 215 Cal.App.2d Supp. 843, 845-846.) The trial court took note of this fact in its findings. The instructions of the court in the tort action left the question of whether punitive damages should be assessed, if the facts warranted them, to the sole discretion of the jury.[7] The verdict, therefore, does not necessarily imply that the employee's acts were not unprovoked nor malicious.

On the record it cannot be determined whether the damages were awarded for injuries occasioned by an act which gave rise to the interposition of the public policy precluding indemnity. The employee-lessor established the indemnity agreement and the loss. The burden was on the employer-lessee to establish illegality.

If the first part of the clause in question be considered as analogous to the obligations ordinarily assumed by an insurer (see *John E. Branagh & Sons* v. *Witcosky, supra,* 242 Cal. App.2d 835, 838-839), the failure of the employer-lessee to furnish indemnity, either directly or through its insurer as its agent, renders it liable for the judgment. ██ An insurer that wrongfully refuses to defend is liable for damages measured by the expenses incurred by the insured in defending the claim, and by any amount paid in reasonable settlement of the claim, or recovered as a judgment against the insured. (*Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, 279-280; *Tomerlin* v. *Canadian Indem. Co., supra,* 61 Cal.2d 638, 649-650; *Arenson* v. *National Auto. & Cas. Ins. Co., supra,* 45 Cal.2d 81, 84; *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 784-785; *Ritchie* v. *Anchor Cas. Co., supra,* 135 Cal.App.2d 245, 258.)

██ If the last section of the clause is deemed controlling, the employer-lessee is subject to the same liability, whether there was a failure to secure insurance, or a failure to name the employee-lessor as an insured under the comprehensive coverage. ██ The failure to maintain insurance as agreed

[7] The court instructed as follows: "Now, since that is the first time you have heard about punitive damages, maybe I better tell you what I mean by that. If the striking or pushing of Mr. Shoberg which caused his injuries was unprovoked, causeless, with a desire to hurt or to gratify anger or malice, the jury, if they see fit, may add to the compensatory damages a sum as punitive damages which will serve as punishment to Mr. Welch. Whether you add punitive damages or not under such circumstances is left solely to your discretion as is the amount."

is a breach of the lease giving rise to a liability measured by the damage suffered from failure to secure indemnity from the promised insurance. (See *Fred A. Chapin Lbr. Co.* v. *Lumber Bargains, Inc., supra,* 189 Cal.App.2d 613, 617 and 621; *American Trust Co.* v. *Truck Ins. Exchange* (1957) 147 Cal.App.2d 395, 397-398 [305 P.2d 73].) ▮ Where there is an agreement for insurance between parties standing in the relationship of lessor and lessee, and the party obligated, in violation of his agreement, procures insurance payable to himself alone, the other party for whose benefit the agreement was made has an equitable lien on the proceeds of such insurance. (*Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 718, 724 [62 P.2d 735]; *Fred A. Chapin Lbr. Co.* v. *Lumber Bargains, Inc., supra,* at p. 617.)

"If the lessor in the instant case maintained the fire insurance on its buildings in its name alone, assuming the lease contemplated that such insurance should be maintained for the benefit of the lessee as well as the lessor, the latter holds the proceeds of any such policy subject to the aforesaid equitable lien of the lessee. The amount of this lien would offset the amount of the damage which the lessor sustained as a result of the destruction of its buildings, because the loss against which the lessee was indemnified was that sustainable as a result of its liability for the damage which the lessor sustained. On the other hand, if the lessor breached its obligation and did not maintain fire insurance as agreed, its liability for breach of the lease would offset the lessee's liability for negligent use of the premises; except as hereinafter noted, the amount of damages recoverable upon these respective liabilities would be the same." (*Fred A. Chapin Lbr. Co.* v. *Lumber Bargains, Inc., supra,* 189 Cal.App.2d 613, 617.)

▮ So here the court correctly determined that the employee-lessor was properly entitled to indemnity. Insofar as any of the trial court's conclusionary findings of fact are inconsistent with the principles set forth herein, the effect is inconsequential. The uncontradicted facts sustain the conclusions of law and the judgment.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.