[Civ. No. 58089. Second Dist., Div. One. June 25, 1981.]

WILLIAM JEROME POLLACK, Plaintiff and Appellant, v.
ROBERT C. LYTLE, Defendant and Respondent.

**COUNSEL**

William Jerome Pollack, in pro. per., Fred B. Belanger, De Goff & Sherman and Victoria J. De Goff for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel and Roy G. Weatherup for Defendant and Respondent.

OPINION

**SPENCER, P. J.—**

INTRODUCTION

Plaintiff William Jerome Pollack appeals from an order of dismissal[1] as to defendant Robert C. Lytle which was entered after the trial court sustained without leave to amend defendant's demurrer to the first (fraud), second (reasonable value of services), and fifth (declaratory relief) causes of action of plaintiff's third amended complaint. The order sustaining the demurrers recited that plaintiff's fourth cause of action, seeking indemnity, "is off calendar as plaintiff orally dismisses it without prejudice."

STATEMENT OF FACTS[2]

During January 1974, plaintiff and Sidney B. Daniels (Daniels) entered into a written agreement in which plaintiff, a licensed California attorney, undertook to prepare and prosecute a medical malpractice action against Kaiser Foundation Hospitals and Dr. David Eder with respect to the negligent causation of Daniels' quadraplegia. Plaintiff agreed to advance all necessary expenses in return for a 50 percent contingency fee and reimbursement for expense advances made. Reimbursement was not contingent upon the recovery of damages.

Pursuant to his agreement with Daniels, plaintiff filed an action in the Los Angeles County Superior Court on February 21, 1974. Successful prosecution of the Daniels' action required the expert testimony of at least one competent neurological surgeon. Due to a purported malpractice crisis, plaintiff became aware that it would be extremely difficult to secure a neurological surgeon who would testify on Daniels' behalf.

---

[1]While minute orders are generally nonappealable, an order of dismissal as to a particular defendant following sustaining of demurrer without leave to amend operates as a final judgment. (*Diaz v. United California Bank* (1977) 71 Cal.App.3d 161, 166 [139 Cal.Rptr. 314].)

[2]In assessing whether a cause of action is stated as against a general demurrer, all material facts properly pleaded on the face of the complaint and those which reasonably arise by implication must be accepted as true. (*Glaire v. La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].)

In approximately May 1976, seven months prior to the scheduled trial of the Daniels' action, defendant initiated discussions with plaintiff's office regarding the availability of the necessary expert witness. Pursuant to a preconceived plan to harm plaintiff, defendant falsely represented that he was a close personal friend of a board-certified neurosurgeon, Dr. Henry P. Dodge; that he was employed by a law firm specializing in medical malpractice cases; and that he was experienced in the preparation and trial of such cases. Thereafter, defendant recommended that he arrange for Dr. Dodge to evaluate Daniels' medical records and examine Daniels after which defendant would discuss with Dr. Dodge the relevant facts with respect to the medical care provided Daniels and the cause of the quadraplegia in order to obtain his expert opinion.

Subsequently, defendant falsely represented to plaintiff that it was Dr. Dodge's unequivocal expert opinion that Kaiser Foundation Hospitals had violated standard hospital practice and Dr. Eder had violated standard surgical practice, each of which violations resulted in Daniels' quadraplegia. In addition, defendant falsely represented that Dr. Dodge would be willing to testify on behalf of Daniels, contrary to his ordinary preference, only because of his friendship with defendant and only in the event that defendant served as Daniels' trial counsel.

Defendant promised plaintiff that if associated as trial counsel on the Daniels' matter, he would advise plaintiff in a timely manner if it became necessary to secure additional expert witnesses, would attempt to secure additional experts in the event of such necessity, would report to plaintiff fully and accurately the progress of the trial in order to permit plaintiff to form a reasoned judgment as to whether and when Daniels should be advised to accept an offer or settle the case, and to notify plaintiff and Daniels immediately of the precise conditions and terms of any settlement offer to allow plaintiff's reasoned consideration of the offer and meaningful explanation thereof to Daniels. These promises were false and defendant made the foregoing representations and promises with full knowledge of their falsity and for the purpose of inducing plaintiff to associate him as trial counsel in the Daniels' matter.

In reliance on defendant's false representations and promises, plaintiff did engage and associate defendant as attorney of record and agreed that he was to receive one-third of plaintiff's contingent fee

while plaintiff would continue to advance funds for all necessary expenses. Thereafter, defendant repeatedly assured plaintiff that Dr. Dodge remained of the opinion that Kaiser Foundation Hospitals' and Dr. Eder's violations of standard professional practice were the proximate cause of Daniels' quadraplegia and would so testify. On approximately November 22, 1976, defendant represented to plaintiff that Dr. Dodge had testified "beautifully" and "gone all the way for Daniels" during the deposition given on November 15. In truth, Dr. Dodge had not been questioned at all by either defendant or by opposing counsel present at the deposition with respect to the issue of proximate cause. Had plaintiff known the falsity of defendant's representations and promises and the true state of facts, he would neither have associated defendant as counsel nor relied on the sufficiency of Dr. Dodge's expert opinion. Rather, he would have obtained other experts and made alternative arrangements for adequate preparation, assessment and trial of Daniels' case.

Plaintiff repeatedly requested that defendant submit a written summary of the facts, the questions based on those facts which were submitted to Dr. Dodge, and Dr. Dodge's responses. On each occasion, defendant promised to comply promptly, but never did so. In response to plaintiff's requests, defendant repeatedly agreed to perform his promises, but failed to do so. Unbeknown to plaintiff, defendant never intended to perform his promises and, in fact, from the outset intended to gain exclusive control of the Daniels' matter by causing a rift in plaintiff's relationship with Daniels, thereby inducing Daniels to discharge plaintiff.

Approximately December 1, 1976, defense counsel in the underlying case offered on behalf of Kaiser Foundation Hospitals and Dr. Eder to settle for $250,000. In continuing reliance on defendant's false representations, particularly with respect to Dr. Dodge's anticipated testimony, plaintiff formed the opinion that it would be preferable to await the empaneling of a jury in the hope of securing a larger settlement offer. Furthermore, defendant recommended that the offer be rejected. Accordingly, Daniels was so advised and the offer was rejected.

At some time during December 1976, during the empanelling of the jury, defendant succeeded in inducing Daniels, by improper means, to discharge plaintiff. Thereafter, neither defendant nor Daniels communi-

cated with plaintiff as to the status of the case. As a result, plaintiff was not informed of a renewal of the $250,000 settlement offer on approximately December 13, 1976, or of the condition that it required prompt acceptance. Had plaintiff known of the offer, he would have recommended that Daniels accept it immediately and Daniels would have accepted it immediately. However, defendant allowed the offer to lapse.

During the course of the trial, defendant failed to question Dr. Eder as to whether his treatment conformed with standard neurosurgical practice. Moreover, Dr. Dodge did not testify that negligence on the part of the hospital or Dr. Eder was the proximate cause of Daniels' quadraplegia. As a direct result of defendant's failure to elicit essential evidence from Dr. Eder's and Dr. Dodge's testimony, there was no substantial evidence that Dr. Eder was negligent or that negligence on the part of the hospital was the proximate cause of Daniels' quadraplegia and the jury returned a verdict in favor of the hospital and Dr. Eder.

Thereafter, defendant induced Daniels to file a malpractice action against plaintiff, seeking $1 million in general damages and $2 million in punitive damages.

## CONTENTS

Plaintiff contends that the trial court erred in sustaining defendant's demurrers to the first and third amended complaints which include causes of action for breach of fiduciary duty, fraud, breach of contract, legal malpractice, and declaratory relief without leave to amend.

## DISCUSSION

On appeal, the plaintiff bears the burden of demonstrating either that a demurrer was sustained erroneously or that sustaining a demurrer without leave to amend was an abuse of discretion. (*Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862].) A trial court's ruling sustaining a demurrer is deemed erroneous where a plaintiff has stated a cause of action under any possible legal theory. (See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 833 [134 Cal.Rptr. 839].) In assessing the sufficiency of a demurrer, all material facts pleaded in the complaint

and those which arise by reasonable implication are deemed true. (See *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865]; *Glaire* v. *La Lanne-Paris Health Spa, Inc., supra*, 12 Cal.3d 915, 918.)

In the instant case, plaintiff has alleged sufficient facts to establish that defendant acted as his agent in the prosecution of the Daniels' matter. It is well settled that a contract of agency may be implied from the conduct of the parties. (*Bergtholdt* v. *Porter Bros. Co.* (1896) 114 Cal. 681, 688 [46 P. 738]; cf. *Englert* v. *Ivac Corp.* (1979) 92 Cal.App.3d 178, 189-190 [154 Cal.Rptr. 804].) The allegations that plaintiff engaged defendant to conduct trial preparation and to try the malpractice action; that defendant promised to keep plaintiff informed of expert witness availability and adequacy as well as the terms and advisability of any settlement offer; that plaintiff relied on defendant's representations and recommendations in advising Daniels; and that plaintiff repeatedly requested written reports from defendant raise a clear inference of agency.

An agent is a fiduciary with the same obligations of diligence and faithful service as a trustee. (Civ. Code, § 2322, subd. 3; *Cutler* v. *State Bar* (1969) 71 Cal.2d 241, 251 [78 Cal.Rptr. 172, 455 P.2d 108].) Accordingly, an agent must make the fullest disclosure of all material facts which might affect his principal's decision-making. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45]; *Smith* v. *Zak* (1971) 20 Cal.App.3d 785, 793 [98 Cal. Rptr. 242].) In addition, an agent is bound to use reasonable care, skill and diligence in the performance of the object of the agency. (Lab. Code, §§ 2858, 2859; *Stiefel* v. *McKee* (1969) 1 Cal.App.3d 263, 266 [81 Cal.Rptr. 565].) Finally, an agent is under a duty not to compete with his principal on matters connected with the agency. (*Realty Co. of America* v. *Burton* (1958) 160 Cal.App.2d 178, 191 [325 P.2d 171]; Rest.2d Agency, § 393.)

Plaintiff has alleged breaches of all of the foregoing duties. He has alleged that defendant, who gained employment as cocounsel by misrepresenting that he was a skillful and experienced attorney in the area of medical malpractice, failed to elicit evidence of Dr. Eder's negligence and failed to develop the requisite evidence of causation. By any reasonable interpretation, this amounts to a demonstrated lack of even minimal legal knowledge and skill or a failure to exercise reasonable

skill and diligence. He further alleges that defendant misrepresented or failed to disclose material facts pertinent to the prosecution of the Daniels' matter. Finally, plaintiff alleges that defendant acted purposefully to cause a rift between plaintiff and Daniels and to induce Daniels to discharge plaintiff. There could be no more direct competition for the subject matter of the agency.

■ The breach of a fiduciary duty is tortious in nature. (See *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 871 [161 Cal.Rptr. 342].) Civil Code section 3333 establishes the measure of damages applicable to tortious conduct: "[F]or the breach of an obligation not arising from contract, the measure of damages ... is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Accordingly, a fiduciary in breach must give the injured party the benefit of his bargain, placing him (insofar as possible) in the same position he would have enjoyed had the fiduciary performed his duties. (See *Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 689 [134 Cal.Rptr. 709].)

■ It is beyond question that plaintiff has alleged detriment proximately resulting from defendant's breaches of fiduciary duty. He has alleged that as a direct result of defendant's failure to exercise reasonable care, skill and diligence, the jury found against Daniels. He has further alleged that defendant's failure to disclose material facts with respect to Dr. Dodge's prospective testimony and plaintiff's reliance on defendant's false representations as to the expected nature of that testimony resulted in his advising Daniels to reject the settlement offer of $250,000 and, but for defendant's withholding information as to the second offer, plaintiff immediately would have recommended acceptance and Daniels would have accepted. Finally, plaintiff has alleged that defendant wrongfully induced Daniels to lose faith and discharge him. As a result, plaintiff has suffered professional embarrassment; impaired reputation; Daniels' loss of professional confidence in him; the resulting exposure to malpractice liability with the attendant expenses and loss of business which may be attributable to the necessity of defending against Daniels' suit seeking $1 million in compensatory damages and $2 million in exemplary damages; and the loss of one-third of the $250,000 settlement offer which he alleges Daniels would have accepted. While plaintiff may have a difficult time proving this last element of damage, he has adequately alleged facts to show its existence.

It is axiomatic that once the cause and existence of damages have been established, recovery will not be denied because the damages are difficult of ascertainment. (*Horn* v. *General Motors Corp.* (1976) 17 Cal.3d 359, 369 [131 Cal.Rptr. 78, 551 P.2d 398].) Thus plaintiff has done all that normally would be required in order to state a cause of action for breach of fiduciary duty.

We are not unmindful of the growing body of law which holds, as a matter of public policy, that a successor attorney owes no duty to his predecessor. (See, e.g., *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393]; *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422].) The roles of successor and associate attorneys are decidedly different. In the fulfillment of his duty of undivided loyalty to the client, a successor attorney must view the client's situation as of the moment when he is engaged. Hence public policy requires that he not be subjected to any possible conflict of interest which may deter him from determining the best interests of the client by the possibility that he may be held liable for his acts by his predecessor. (See *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d 347, 356.) In contrast, an associate attorney acting as the agent of the principal attorney replaces no one, but acts at the behest of his principal.

Admittedly, he remains bound to act in the best interests of the client, but this creates no unavoidable conflict. Should he find that the principal attorney's actions to date pose a potential danger to the client's best interests, the agent-associate is dutybound to make the fullest disclosure of these material facts to the principal attorney. Since the principal attorney and the associate attorney each owes the same duty of loyalty to the client, the disclosure of information which reveals a potential danger to the client's interests will normally prompt the principal attorney to act in protection of those interests. However, should the principal attorney choose to ignore the client's interests, the agent-associate remains free to terminate the agency relationship and withdraw as associate counsel. Furthermore, the associate attorney's duty to exercise reasonable professional care, skill and diligence on behalf of the client is precisely equivalent to the duty he owes his principal in dealing with the subject matter of the agency. Accordingly, public policy considerations do not mandate that an associate attorney remain free from liability for

a breach of the duty owed to his principal. To the contrary, whether associate counsel is brought in from outside the principal attorney's office or is the junior associate in a firm of attorneys, the problems inherent in allowing an agent-associate to act in conflict with or contradiction of the principal attorney are manifest. Holding that an associate attorney owes no duty to anyone but the client would create the potential for a battle of wills over promotion of the client's interests, a situation which could well rebound to the client's detriment, for the determination of a client's best interests is at best a subjective value judgment upon which reasonable minds could differ. Moreover, in view of the principal attorney's liability for the acts of subordinate counsel under the doctrine of respondeat superior, it would be manifestly unfair to relieve an agent-associate of accountability to his principal.

■ An application of agency principles to the relationship of an associate attorney with the principal attorney would entitle plaintiff to indemnification from defendant as to liability resulting from his tortious conduct. The right to indemnity is implied from the relationship of the parties. (*Davidson* v. *Welch* (1969) 270 Cal.App.2d 220, 226 [75 Cal. Rptr. 676]; *Lewis Avenue Parent Teachers' Assn.* v. *Hussey* (1967) 250 Cal.App.2d 232, 236 [58 Cal.Rptr. 499].) Absent the public policy considerations found in the relationship of predecessor-successor attorneys, there is no reason to deny a principal attorney the benefit of indemnity. Hence plaintiff adequately stated a claim for declaratory relief as to his right to indemnity.

■ In addition to successfully stating a cause of action for breach of fiduciary duty, plaintiff has stated a cause of action for fraud. The trial court found that plaintiff had adequately alleged that defendant made representations, knowing them to be false, for the purpose of inducing plaintiff's reliance thereon and that plaintiff reasonably relied on defendant's false representations. This is clearly the case. However, the trial court further found that plaintiff had failed to allege damage in that he could not demonstrate recoverable pecuniary loss.

■ It is true that a fraud action commonly seeks to recover pecuniary loss resulting from the invasion of a property interest. Yet, as noted in *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 805 [142 Cal.Rptr. 487]: "'There is no essential reason to prevent a deceit action from being maintained, for intentional misstatements at least, where other types of interests are invaded; ....' [Citation omit-

ted.]" Civil Code section 1709 governs the damages recoverable for fraud: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Clearly, section 1709 does not limit recovery to pecuniary loss.

■ Plaintiff alleges that, in reliance on defendant's false representations as to his professional expertise and Dr. Dodge's expert opinion as to negligence and proximate cause, he forewent the opportunity (a) to secure any additional expert witness or (b) to urge upon Daniels acceptance of the $250,000 settlement offer in view of the lack of evidence of proximate cause which offer Daniels would have accepted. Hence the underlying matter went to trial with plaintiff unaware of crucial defects in proof. As a result, a verdict was returned in favor of the defendants in the underlying case and plaintiff was exposed to malpractice liability. Detriment to plaintiff is clearly inferable from the foregoing. He is obliged to defend a malpractice action whereby he most assuredly will incur expenses, lose time from his practice, suffer inconvenience, face professional embarrassment and the impairment of his professional reputation. In addition, he suffered the loss of 1/3 of the $250,000 settlement offer which Daniels would have accepted. Under Civil Code section 1709, that is sufficient damage to support a cause of action for fraud.

■ Although plaintiff has adequately stated causes of action for breach of fiduciary duty, fraud, and declaratory relief, it is clear that the trial court was correct in determining that plaintiff is unable to state causes of action for breach of contract and legal malpractice. When a contract between attorneys involves a contingent fee, it is based on a mere expectancy of pecuniary gain with no measurable certainty of realization. Hence recovery may be sought only upon occurrence of the contingency. (*Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 792 [100 Cal. Rptr. 385, 494 P.2d 9].) It follows that plaintiff is unable to allege that defendant's breach of contract proximately caused any measurable injury in that the contingency failed to materialize. As to legal malpractice, any duty running from defendant to plaintiff is either contractual in nature or stems from the principal-agent fiduciary relationship. A breach of the former is disposed of by plaintiff's inability to state a cause of action for breach of contract and a breach of the latter is subsumed in plaintiff's cause of action for breach of fiduciary duty.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

Lillie, J., concurred.

**JOHNSON, J.\***—I respectfully dissent.

A fundamental question presented in the case at bench concerns the duties, if any, which should be recognized between associated counsel during their representation of a common client in order to properly plead a cause of action between such attorneys. The majority opinion applies principles of agency and fiduciary law for the first time to cases which involve lawsuits between cocounsel. Their cited cases, therefore, concern traditional applications of fiduciary and agency principles in cases which do not involve disputes among attorneys.

There is a substantial body of law concerning the liability of attorneys who sue each other in connection with common clients. A fiduciary relationship has not heretofore been recognized, and, regardless of legal theory asserted, there has emerged a recurring theme; a client's right to the undivided loyalty of his or her attorneys must be protected, even when the result of such rule is the denial of an attorney's cause of action against another attorney. It is to be noted, however, that research has not revealed cases which involve a cocounsel dispute as herein.

The majority found that the trial court had properly determined plaintiff was unable to state a cause of action for breach of contract, because the contingency of a recovery in the medical malpractice case failed to occur, and for malpractice, but had incorrectly sustained demurrers as to the remaining causes of action. The problem of ascertaining damages, however, arises whether or not the pleading is based upon contract or tort. There is case authority supporting the sustaining of a demurrer in attorney contingent fee cases, though albeit not cocounsel cases, for the causes of action pleaded by plaintiff except for breach of fiduciary duty.

In contingent fee cases wherein a recovery was eventually obtained lawyers have been permitted to sue one another for a share. (See, e.g., *Breckler* v. *Thaler* (1978) 87 Cal.App.3d 189 [151 Cal.Rptr. 50]

---

*Assigned by the Chairperson of the Judicial Council.

(agreement between lawyers to share fee); *Bunn* v. *Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450 [342 P.2d 508] (award of fees for reasonable value of attorney's service); *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310] and *Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331 [138 Cal.Rptr. 670] (suits for wrongful interference with contractual relationship with a client).

Compensation has been denied, however, in contingent fee cases wherein client recoveries were not obtained. The trial court relied on *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9] and *Mason* v. *Levy & Van Bourg* (1978) 77 Cal.App.3d 60 [143 Cal. Rptr. 389], in finding that plaintiff failed to allege damages which are recoverable because the contingency of achieving a settlement or favorable jury verdict did not occur. *Fracasse* denied a wrongfully discharged attorney compensation from his former client for services he rendered pursuant to a contingent fee contract reasoning that because the contingency did not in fact occur no damages had been sustained and public policy would best be served by affording maximum protection to the client vis-à-vis his attorney. For the same reasons the *Fracasse* court upheld the sustaining of a demurrer without leave to amend as to a cause of action for declaratory relief.

*Mason* shares many factors in common with the case at bench. Attorney Mason selected the attorney who was to handle the case for his client; the successor attorney allegedly committed a gross error by letting the statute of limitations expire; and the court sustained demurrers as to Mr. Mason's causes of action for fraud, negligence and breach of contract to recover his lost fee on the contingent fee contract. Basing its decision primarily upon public policy grounds, the court refused to recognize a cause of action in either contract or tort, stating: "It is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his clients. (See, ABA Code of Prof. Responsibility, canon 5.) *This loyalty should not be diluted by a duty owed to some other person, such as an earlier attorney.* While, as a practical matter, both the client and former attorney stand to benefit from any recovery in the client's action, their interests are not identical. . . . *It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him an obligation to take into account the interests of predecessor attorneys.*

"If the law were to recognize duties, such as are suggested here, between successive attorneys representing the same client, a multitude of litigation could be spawned with an attendant adverse impact on attorney-client relationships. Every lawyer could blame his problems in a lawsuit on his predecessors. Every lawyer referring a case to another lawyer would be in a position to claim that the negligence of the second lawyer caused a meritorious claim to be lost or settled for an insufficient amount. Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome. *Considerations of public policy support the conclusion that an attorney's duty of undivided loyalty to his client should not be diluted by imposing upon him obligations to the client's former attorney, or at least obligations greater than the client himself owed to the former attorney.*" (77 Cal.App.3d 66-67, italics added.)

In terms of *Mason's* public policy rationale, I see no logical distinction that should be based on litigants' status as cocounsel as opposed to successor counsel.[1] As in *Fracasse* v. *Brent*, the *Mason* court relied heavily on the premise that the practice of law remains a profession rather than a business, and that the client's interests must be protected from even the possibility of less than total devotion to his interests by the attorney of his choice. The *Mason* rationale is also evident in such cases as *Norton* v. *Hines* (1975) 49 Cal.App.3d 917 [123 Cal.Rptr. 237] and *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], which dealt with an attorney's responsibility to third parties, but also relied on the concept of undiluted responsibility to the client.

Plaintiff requested that his equitable indemnity cause of action for damages consisting of potential liability in the Daniels legal malpractice case be dismissed without prejudice. Although the majority assert that application of agency principles would entitle plaintiff to indemnifica-

---

[1]The relationship in the case at bench was actually one in which Mr. and Mrs. Daniels engaged the services of the original attorney in January 1974 who then referred the matter to plaintiff who prepared and filed the pleadings in February 1974. Plaintiff then associated defendant in May 1976, seven months prior to trial to do discovery and try the case. Plaintiff and defendant became attorneys of record. The contingent fee was to be split among the original attorney, plaintiff and defendant. During early December 1976 Daniels discharged plaintiff. Mr. and Mrs. Daniels then filed an action against plaintiff alone.

tion, it is to be noted that there is a considerable body of case law, arising in numerous contexts, which precludes one attorney from pursuing another for indemnity for his contribution to the harm of a client. (See, e.g., *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal. Rptr. 393]; and *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal. Rptr. 422].)

Regardless of context, the underlying rationale is similar to that expressed in *Mason*, that the possibility of a cause of action for indemnity in legal malpractice cases, whether sought against a predecessor or successor attorney, would create such potentially burdensome conflicts of interest for an attorney representing a client, public policy dictates that such a cause of action should be barred. The decisions recognize that such holding is a departure from the general tort principles applicable to joint and successor tortfeasors, but justify the departure on the basis of protecting the attorney-client relationship from the intrusions foreseeable in the area of exercising professional judgment concerning alternative courses of action; surely such independent professional judgment is the most crucial area of expertise which an attorney owes his or her client even in cocounsel cases. The issue presented is one concerning which there is vigorous expression both pro and con; see, e.g., the dissenting opinions in *Gibson, Dunn & Crutcher, supra,* 94 Cal.App.3d 347, and *Parker* v. *Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197].

The majority opinion creates serious inroads into the body of law concerning lawyer disputes which has as its overriding consideration the maintenance of the duty of an attorney to maintain undivided loyalty to his client. In order to maintain this high priority duty between a client and his or her attorney courts have frequently sustained demurrers in attorney lawsuits, thus precluding recovery of lost fees. The majority, by establishing a fiduciary duty between associated attorneys, would require an equal obligation to cocounsel as now exists to the client only. They argue that this creates no unavoidable conflict; I cannot agree. Such a duty would require an associated attorney, for example, to withdraw as counsel if he could not ethically follow the course directed by the selecting attorney. Withdrawal conflicts with many duties to the

client including those imposed by rule 2-111 of the Rules of Professional Conduct of the State Bar of California which prohibit an attorney from withdrawing as counsel without consent of the court and where the client would be prejudiced. In the case at bench the client during the course of the litigation decided to discharge plaintiff as his attorney. The client has such a right even though the discharge is wrongful (*Fracasse* v. *Brent, supra*, 6 Cal.3d at p. 791.) The potential for conflict is manifest. By recognizing a fiduciary duty between cocounsel the exposure of attorneys to liability is increased, thus placing them in an untenable position of divided loyalties to their clients and associated counsel.

To affirm the sustaining of a demurrer without leave to amend due to plaintiff's inability to properly allege either damages or a fiduciary duty may seem to impose a harsh burden on a wronged attorney. However, in balancing the interests of attorneys in protecting their fees and the public policy of protecting clients' rights to receive the undivided loyalty of all counsel who represent them, the wiser course is to reject the recognition of a fiduciary duty between cocounsel.

Thus I would extend the principles enunciated in successor attorney contingent fee cases to cocounsel cases and, for public policy reasons, would refrain from finding the necessary element of fiduciary duty exists for purpose of stating a cause of action for breach of fiduciary duty.

A petition for a rehearing was denied July 21, 1981, and respondent's petition for a hearing by the Supreme Court was denied August 19, 1981.