Filed 7/1/24  Promote Mexico v. Superior Court CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PROMOTE MEXICO, LLC, | B332617 |
| Petitioner, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV28457) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| MONSTER ENERGY COMPANY, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Bruce G. Iwasaki, Judge.  Petition granted.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, John D. Alessio, Sean M. Sullivan and Zagros S. Bassirian for Petitioner.

No appearance for Respondent.

Shook, Hardy & Bacon, M. Kevin Underhill, Marc P. Miles and Kristy A. Schlesinger for Real Party in Interest.

_____

Promote Mexico, LLC petitions for a writ of mandate challenging the trial court's denial of its motion for summary adjudication. The trial court found real party in interest Monster Energy Company (Monster) had no duty to defend Promote Mexico from the claims of Magda Angel, a Monster spokesmodel allegedly injured at an off-road race promoted by Promote Mexico.

We conclude the relevant contractual defense and indemnity provision, which requires Monster to defend Promote Mexico from claims arising from Monster's gross negligence, encompasses Angel's claims, which allege that Monster's negligence was in part responsible for her injuries. We disagree with the trial court that an express provision requiring Promote Mexico to defend Monster from claims arising from death or injury at the race, and the absence of an equivalent provision for Monster, indicates the parties did not intend Monster to defend against such claims. Although the effect of these provisions in this case is the parties will have overlapping and reciprocal obligations to defend the other, this outcome is compelled by the plain language of the agreement.

As an alternative argument to defeat summary adjudication, Monster below contended the signature of Promote Mexico's representative on the agreement containing the defense and indemnity provision was forged, and thus the agreement is void. The trial court did not reach this argument. Accordingly, we grant the writ to vacate the order denying summary

2

adjudication, and remand for the trial court to consider Monster's alternative argument.

## BACKGROUND

1.   *The television sponsorship agreement*

In January 2016, Promote Mexico and Monster entered into an agreement entitled "Television Sponsorship Agreement" (some capitalization omitted) (television sponsorship agreement or agreement).  Promote Mexico is referred to in the agreement as Score International, the name under which Promote Mexico was doing business.  The parties later extended the agreement through the end of 2018.

The agreement concerns Monster's sponsorship of television broadcasts of the SCORE World Desert Championship off-road race series and related events, referred to in the agreement as "Events" or, in the singular, "Event."  The agreement identifies Promote Mexico as the "promoter and producer" of the Events.

At issue in this writ proceeding is section 6.01 of the agreement, entitled "Indemnification" (underscoring omitted). Subsection 6.01(a) imposes indemnification and defense duties on Promote Mexico toward Monster.  It states, in relevant part, "[Promote Mexico] shall indemnify, protect, defend and hold harmless [Monster] . . . from and against any and all claims, liabilities, losses, damages, injuries, demands, actions, causes of action, suits, proceedings, judgments and expenses, including those incurred at the trial and appellate levels and in any bankruptcy, reorganization, insolvency or other similar proceeding, arising from or connected with:  (i) any breach by [Promote Mexico] of any provision of this Agreement or any

3

representation or warranty made by it herein; (ii) any negligent act or omission to act of [Promote Mexico], its employees, servants and agents; and/or (iii) any death or injury to any person or damage to any property related to the Event by the actions of [Promote Mexico], its respective employees, servants, and agents."

Subsection 6.01(b) imposes indemnity and defense obligations on Monster toward Promote Mexico. It reads, in relevant part, "[Monster] shall indemnify, protect, defend and hold harmless [Promote Mexico], its parent, subsidiary and affiliated companies, and their respective directors, officers, employees and agents, from and against any and all claims, liabilities, losses, damages, injuries, demands, actions, causes of action, suits, proceedings, judgments and reasonable expenses, arising from or connected with: (i) any breach by [Monster] of any provision of this Agreement or any representation or warranty made by [Monster] herein; (ii) any grossly negligent act or omission to act of [Monster], its employees, servants and agents; and (iii) [Promote Mexico's] use of the [Monster] IP, logos or any other material provided by [Monster] to [Promote Mexico] under this Agreement."

## 2. *Complaint, cross-complaints, and motions for summary adjudication*

On August 12, 2019, Angel filed a complaint alleging a vehicle driven by racer Morgan Langley struck her at the 2018 Baja 1000 race. Angel alleged that at the time of the accident she was working at the race as a spokesmodel for Monster. She named as defendants Monster, Langley, and two entities affiliated with Langley, COPS Racing, LLC and Langley

4

Productions, Inc. Angel later amended her complaint to add Promote Mexico and its alleged owner, Roger Norman.

Angel alleged, inter alia, that Monster and Promote Mexico had "negligently and carelessly failed to use reasonable care and skill to prevent injury to spokesperson models and pre-race attendees and workers, including MAGDA ANGEL; failed to adopt adequate policies, procedures, rules, or guidelines to guard against or prevent injury; and failed to provide adequate and reasonable training, instruction, warnings, security, supervision, operation, management, coordination, or staffing to guard against or protect Plaintiff MAGDA ANGEL from the unexpected and hidden risks, hazards, and dangers associated with the performance of her duties as a 'Monster Energy Drink Girl' . . . . "

Promote Mexico and Monster filed competing cross-complaints against one another seeking, inter alia, indemnity and defense. Monster moved for summary adjudication on its cross-complaint, and the trial court granted it, finding that Promote Mexico owed Monster a duty to defend under subsection 6.01(a) of the television sponsorship agreement. That order was immediately appealable because it included a payment order. (See *Watts Industries, Inc. v. Zurich American Ins. Co.* (2004) 121 Cal.App.4th 1029, 1038.) That appeal is before us in case No. B328413, which we consider concurrently with this writ petition.

Promote Mexico then moved for summary adjudication on its own cross-complaint as to Monster's duty to defend Promote Mexico. Promote Mexico argued Angel's allegations "implicat[ed] gross negligence on the part of Monster," thus triggering the duty to defend under subsection 6.01(b) of the television sponsorship agreement.

5

Monster opposed the motion arguing, inter alia, the television sponsorship agreement expressly imposed a duty on Promote Mexico to indemnify and defend Monster from claims arising from injury or death arising from the off-road racing events but imposed no reciprocal obligation on Monster.  Monster further argued the television sponsorship agreement applied only to television broadcasts of races, not the races themselves, but assuming the television sponsorship agreement applied, Angel had not alleged gross negligence as required to trigger Monster's duty to defend.  Monster later filed a supplemental opposition contending the television sponsorship agreement was void because the signature of Promote Mexico's representative was forged.[1]

### 3. *Trial court's ruling*

Following hearing, the trial court issued a written ruling denying Promote Mexico's motion for summary adjudication.  The court rejected Monster's argument that the television sponsorship agreement did not apply to the race, but concluded the agreement imposed no duty on Monster to defend Promote Mexico in this case.

The trial court noted that the television sponsorship agreement does not impose identical indemnity and defense duties on the parties.  On the one hand, the agreement requires Promote Mexico to defend Monster from, inter alia, "any and all claims . . . arising from or connected with . . . 'any death or injury

---

[1] The supplemental opposition is not included in the exhibits of this writ proceeding, but is referred to and briefly summarized in the trial court's ruling on Promote Mexico's summary adjudication motion.

6

to any person or damage to any property related to the Event by the actions of [Promote Mexico] . . . . ' "  On the other hand, the agreement does not contain equivalent language requiring Monster to defend Promote Mexico from claims involving death or injury during the race.  Rather, as summarized by the trial court, Monster's "duty to defend and indemnify Promote Mexico is limited to three circumstances:  (1) Monster's breach of the Television Sponsorship Agreement, (2) 'any grossly negligent act or omission to act of [Monster],' and (3) Promote Mexico's use of Monster's intellectual property."

The trial court continued, "[B]ased on accepted principles of contract interpretation, the [agreement's] inclusion of the provision to defend for injuries and death occurring at 'Events' must be interpreted to intentionally omit such coverage from" the subsection governing Monster's defense and indemnity obligations.  The court reasoned, "Interpreting the agreement otherwise would render subsection (iii) in Section 6.01(a) [the "death or injury" language] superfluous.  That is, subsection (iii) in Section 6.01(a) would not have been necessary and arguably been duplicative *if* subsection (ii) of Section 6.01(a) [regarding Promote Mexico's negligence] could have been read so broadly to include conduct specified in subsection (iii).  Thus, the inclusion of subsection (iii) in Section 6.01(a) reflects the intent of the parties.  They intended that the conduct that triggers Promote Mexico's duty to defend Monster Energy be different from what triggers Monster Energy's defense duty to Promote Mexico."

The trial court declined to reach Monster's argument that the signature on the agreement was forged but instead observed, "It appears that Monster Energy has insufficiently thought through the implications of this recent assertion."  The court

7

further stated it was unnecessary to reach the forgery argument given its conclusion the agreement did not impose a duty to defend on Monster in any event. The court noted Monster's argument that Angel's complaint did not allege gross negligence but did not analyze or rule on that argument.

Promote Mexico filed the instant writ petition challenging the denial of summary adjudication. We issued an order to show cause and received briefing from the parties.

## PROPRIETY OF WRIT REVIEW

Under Code of Civil Procedure 437c, subdivision (m)(1), a party may challenge an order granting summary adjudication through petition for a peremptory writ, although " 'writ review is deemed extraordinary and appellate courts normally are reluctant to grant it.' " (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 323.) Writ review is appropriate when, inter alia, the order granting summary adjudication "disposes of a large and important portion of the case and intervention by writ will substantially simplify future proceedings." (*Quidel Corp. v. Superior Court* (2020) 57 Cal.App.5th 155, 163.)

Resolving Promote Mexico's challenge on writ review, rather than awaiting judgment and appeal, will substantially simplify future proceedings. The multiple competing cross-complaints for defense and indemnity in the underlying action have led to multiple motions for summary adjudication and multiple rulings on the duty to defend. As noted, the ruling that Promote Mexico has a duty to defend Monster is before us on appeal in case No. B328413. Another ruling finding the driver, Langley, has a duty to defend Promote Mexico is before us on writ review in case No. B333431. Because we must resolve Promote Mexico's appeal against Monster in case No. B328413

8

now, it is preferable that we also resolve Promote Mexico's and Langley's writ petitions, so the parties know their respective defense responsibilities to one another going forward.

Monster argues writ review is not appropriate because Promote Mexico has an adequate remedy at law, namely an appeal from a final judgment. We might accept this argument if all parties were similarly situated, but they are not. By virtue of the payment order issued in tandem with the grant of Monster's motion for summary adjudication, Monster will receive an appellate ruling on its motion now, while the other parties' motions regarding competing claims for a defense would have to await final judgment for an appellate ruling.

## STANDARD OF REVIEW

" 'A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' [Citations.] We review a ruling on summary judgment or summary adjudication de novo and 'decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law.' [Citation.] In so doing, we liberally construe the evidence in favor of the party opposing the motion and resolve all doubts concerning the evidence in their favor." (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161.)

Agreements providing for indemnity and defense as a general matter are "construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent [citation], as ascertained from the

9

contract's language if it is clear and explicit [citation]. Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 (*Crawford*).) In a noninsurance agreement, however, "if one seeks . . . to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault[,] . . . language on that point must be particularly clear and explicit, and will be construed strictly against the indemnitee." (*Ibid.*)

## DISCUSSION

Assuming arguendo the television sponsorship agreement is not void, a question the trial court has yet to address, we conclude the trial court erred in interpreting the agreement not to impose on Monster a duty to defend Promote Mexico.

"[U]nless the parties' agreement expressly provides otherwise, a contractual indemnitor has the obligation, upon proper tender by the indemnitee, to accept and assume the indemnitee's active defense against claims encompassed by the indemnity provision." (*Crawford*, *supra*, 44 Cal.4th at p. 555.) "[T]he duty arises immediately upon a proper tender of defense by the indemnitee, and thus before the litigation to be defended has determined whether indemnity is actually owed." (*Id.* at p. 558.) "[C]laims 'embraced by the indemnity,' as to which the duty to defend is owed, include those which, at the time of tender, *allege* facts that would give rise to a duty of indemnity." (*Ibid.*)

The question, then, is whether Angel's claims against Promote Mexico are " 'embraced by the indemnity' " set forth in the television sponsorship agreement.

10

## A. The Parties' Defense Obligations

As the trial court noted, the television sponsorship agreement imposes different indemnity and defense obligations on Promote Mexico and Monster. Subsections 6.01(a) and (b) of the agreement each set forth three circumstances under which Promote Mexico and Monster, respectively, have a duty to indemnify and defend the other.

The first circumstance triggering the duty is materially identical in both subsections: Under subsection 6.01(a)(i), Promote Mexico must indemnify and defend Monster for claims arising from or connected with "any breach by [Promote Mexico] of any provision of [the] Agreement or any representation or warranty made by it herein." Monster has the same obligation towards Promote Mexico under subsection 6.01(b)(i). These subsections are not at issue in this writ proceeding.

The second circumstance is described in similar but not identical subsections. Under subsection 6.01(a)(ii), Promote Mexico must indemnify and defend Monster for claims arising from or connected with "any negligent act or omission to act of [Promote Mexico], its employees, servants and agents." Monster's duty under subsection 6.01(b)(ii), in contrast, is limited to claims arising from or connected with "any *grossly* negligent act or omission to act of [Monster], its employees, servants and agents" (italics added).

The third circumstance described in corresponding subsections are completely dissimilar. Under subsection 6.01(a)(iii), Promote Mexico must indemnify and defend Monster for claims arising from or connected with "any death or injury to any person or damage to any property related to the Event by the actions of [Promote Mexico], its respective employees, servants,

and agents." Under subsection 6.01(b)(iii), Monster must indemnify and defend Promote Mexico for claims arising from or connected with "[Promote Mexico's] use of the [Monster] IP, logos or any other material provided by [Monster] to [Promote Mexico] under this Agreement."

## B. The Agreement Imposes a Duty on Monster To Defend Promote Mexico From Angel's Claims

Promote Mexico contends subsection 6.01(b)(ii) of the agreement, which requires Monster to defend Promote Mexico from claims arising from Monster's gross negligence, imposes a duty to defend in this case. Monster argues, and the trial court concluded, the agreement's inclusion of subsection 6.01(a)(iii), the provision requiring Promote Mexico to defend Monster from claims of injury or death related to the race, indicates the parties did *not* intend to require Monster reciprocally to defend Promote Mexico from such claims, even if they arose from Monster's gross negligence.

The agreement's reciprocal and in some cases overlapping defense obligations have the potential to create odd outcomes no matter how one parses the language, and there are reasonable arguments in favor of both Promote Mexico's and Monster's positions. Ultimately, however, we conclude Promote Mexico has the better argument.

### 1. Monster's promise to defend Promote Mexico from claims arising from Monster's gross negligence encompasses Angel's claims

As an initial matter, we conclude that Monster's promise to defend Promote Mexico from claims arising from Monster's gross negligence, if interpreted without consideration of any other

12

language in the agreement, requires Monster to defend Promote Mexico from Angel's claims. Angel has alleged Monster's negligence led to her injuries. "Gross negligence is a subspecies of negligence; it is not a separate tort." (*Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 825; *Epochal Enterprises, Inc. v. LF Encinitas Properties, LLC* (2024) 99 Cal.App.5th 44, 55 [" 'California does not recognize a distinct common law cause of action for gross negligence apart from negligence.' "].) "Because gross negligence is simply a degree of negligence, the elements of a claim for gross negligence [are] the same as one for ordinary negligence." (*Epochal Enterprises*, at p. 56.)

"[T]o support a theory of ' "[g]ross negligence," ' a plaintiff must allege facts showing 'either a " ' "want of even scant care" ' " or " ' "an *extreme* departure from the ordinary standard of conduct." ' " [Citations.]' " (*Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 881, quoting *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754 (*Anderson*).) Circumstances in which courts have found gross negligence include "conduct that substantially or unreasonably increased the inherent risk of an activity or actively concealed a known risk," or "conduct that evinces an extreme departure from manufacturer's safety directions or an industry standard." (*Anderson*, at p. 881.)

Monster argues Angel's allegations, as well as her discovery responses, do not establish that Monster acted with gross negligence, only ordinary negligence. Assuming arguendo this is so, our Supreme Court has instructed that in determining whether claims fall within the indemnity provisions of an insurance policy, thus triggering a duty to defend, "[C]ourts do not examine only the pleaded word but the potential liability

13

created by the suit." (*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 276 (*Gray*).) "[An insurer] cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable." (*Ibid.*) "[A] complainant in [a] third party action drafts his complaint in the broadest terms." (*Ibid.*) "In light of the likely overstatement of the complaint and of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage." (*Ibid.*) Rather, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Id.* at pp. 276–277.)

Applying these principles, the high court in *Gray* concluded that, although the complaint at issue alleged an intentional assault outside the scope of the insurance policy, the complaint nonetheless "clearly presented the possibility that [the plaintiff] might obtain damages that were covered by the indemnity provisions of the policy," that is, damages based on negligent conduct. (*Gray*, *supra*, 65 Cal.2d at p. 277.) "[D]espite [the plaintiff's] pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, [the insured] might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct." (*Ibid.*) Thus, although the complaint itself alleged a theory of intentional conduct not covered by the insurance policy, "upon proper measurement of the third party action against the insurer's liability to indemnity, [the insurer] should have defended because the loss could have fallen within that liability." (*Ibid.*)

14

In *Davidson v. Welch* (1969) 270 Cal.App.2d 220 (*Davidson*), the Court of Appeal applied *Gray* in the context of a noninsurance indemnity contract. In *Davidson*, plaintiff Shoberg sued defendant Welch, alleging assault. (*Id.* at pp. 224, 235.) The jury was instructed on several theories of liability, including intentional assault and unreasonable self-defense. (*Id.* at p. 235.) The jury found in Shoberg's favor and awarded him $10,000. (*Id.* at p. 225.) The trial court then ordered Welch's employer to indemnify him for the damages pursuant to a clause in his employment agreement, and the employer appealed. (*Id.* at p. 223.)

The Court of Appeal affirmed. (*Davidson*, *supra*, 270 Cal.App.2d at p. 237.) "*Gray* makes it clear that the bare allegations of the claimant's complaint do not control. If the broad charge made, which claims an intentional or wilful tortious act, contains within it the potentiality of a judgment based upon nonintentional conduct, the indemnitor becomes liable to defend." (*Id.* at p. 234.) In that case, "[t]he complaint . . . had the potential of liability for unintentional conduct," and given the jury instructions, "[i]t cannot be determined from the verdict" whether the jury found Welch liable of intentional assault or simply unreasonable self-defense. (*Id.* at p. 235.) Thus, Welch "was properly entitled to indemnity." (*Id.* at p. 237.)

Under *Gray* and *Davidson*, Angel's allegations and discovery responses up to this point are not determinative on the issue of Monster's duty to defend. Angel may amend her complaint, or further facts may come to light during discovery establishing that Monster's alleged breach of duty was so extreme as to constitute gross negligence. Angel has made a "broad charge" that "contains within it the potentiality of a

15

judgment" based on gross negligence. (*Davidson*, *supra*, 270 Cal.App.2d at p. 234.) Thus, her claims are " 'embraced by the indemnity' " (*Crawford*, *supra*, 44 Cal.4th at p. 558), and the agreement imposes a duty on Monster to defend Promote Mexico from those claims unless, as Monster contends, other language in the agreement negates that obligation. We turn to that question next.

**2.** **Promote Mexico's duty to defend Monster from claims relating to injury or death at the race does not affect Monster's duty to defend Promote Mexico from Angel's claims**

We conclude no other language in the agreement, including Promote Mexico's promise to defend Monster in cases of death or injury at the race, negates Monster's duty to defend in this case.

**a.** *The trial court erred in concluding Promote Mexico's interpretation of the agreement rendered Promote Mexico's promise to defend superfluous*

In ruling that Monster did not owe Promote Mexico a duty to defend, the trial court relied on the fact that subsection 6.01(b) of the agreement, outlining Monster's duty to defend, does not include a provision equivalent to subsection 6.01(a)(iii), which requires Promote Mexico to defend Monster from claims related to injury or death at the race. The court found, "[T]he [agreement's] inclusion of the provision [requiring Promote Mexico] to defend for injuries and death occurring at 'Events' must be interpreted to intentionally omit such coverage from" the subsection governing Monster's defense and indemnity obligations. The court further concluded that if the phrase

16

"negligent act" as used in subsections 6.01(a)(ii) and 6.01(b)(ii) could be read to encompass negligence leading to injury or death at the race, that interpretation would render "superfluous" subsection 6.01(a)(iii), which expressly requires defense of claims arising from injury or death at the race.

In other words, if Promote Mexico has promised to defend Monster from claims arising from Promote Mexico's negligence, and that promise is read to encompass within it a promise to defend Monster from claims arising from injury or death at the race, in the trial court's view there would be no need for Promote Mexico's additional express promise to defend Monster from claims arising from injury or death at the race. To avoid rendering subsection 6.01(a)(iii) superfluous, the trial court thus concluded the term "negligent act" in both subsections 6.01(a)(ii) and (b)(ii) must be interpreted as *not* encompassing negligent acts that lead to death or injury at the race. On this basis, the trial court concluded the parties could not have intended Monster's promise to defend Promote Mexico from claims arising from Monster's gross negligence to include claims arising from death or injury at the race.

We disagree with the trial court's reasoning, because Promote Mexico's promise to defend and indemnify Monster from claims arising from its negligence and its promise to defend and indemnify Monster from claims arising from death or injury at the race serve different purposes. Under subsection 6.01(a)(ii) Promote Mexico must defend Monster in any case arising from Promote Mexico's negligence, whether or not related to the race. In contrast, under subsection 6.01(a)(iii), Promote Mexico must defend Monster in any case arising from death or injury at the race "by the actions" of Promote Mexico, whether or not Promote

17

Mexico is negligent. Put another way, one promise is triggered by Promote Mexico's level of fault (negligence), regardless of the circumstances, whereas the other promise is triggered by a particular circumstance (injury or death at the race by the actions of Promote Mexico), regardless of Promote Mexico's level of fault.

To illustrate, if a plaintiff sued Monster for an injury that implicated Promote Mexico's negligence but was unrelated to the race, Monster could not invoke subsection 6.01(a)(iii), and would instead have to rely on (a)(ii) to obtain a defense from Promote Mexico. Conversely, if Monster were sued for death and injury at the race from Promote Mexico's actions, but Promote Mexico's negligence was not at issue, Monster could invoke (a)(iii) but not (a)(ii).

It is true that in this case the protections of the two sections overlap—Angel alleges both that Promote Mexico was negligent and that she was injured at the race in part due to Promote Mexico's actions, and therefore Promote Mexico has a duty to defend under both subsections 6.01(a)(ii) and (iii).[2] As described above, however, this is not always the case, and thus neither subsection renders the other superfluous.

For similar reasons we cannot conclude, as the trial court did, that by omitting a provision equivalent to subsection 6.01(a)(iii) from the paragraph outlining Monster's defense obligations, the parties intended to absolve Monster of a duty to defend Promote Mexico from claims arising from death or injury

---

[2] Promote Mexico disputes that it has a duty to defend Monster, but the trial court found otherwise, a finding we affirm in companion case *Promote Mexico, LLC v. Monster Energy Company*, case No. B328413.

18

at the race.  The omission merely indicates the parties did not intend Monster to defend or indemnify Promote Mexico from death or injury claims *regardless of negligence*.  Rather, Monster only has such a duty if the claims arise from Monster's gross negligence.

> ### b.  *The agreement's plain language compels Promote Mexico's interpretation*

Although we disagree with the trial court's conclusion that Promote Mexico's interpretation of the agreement renders Promote Mexico's promise to defend claims arising from death or injury at the race *superfluous*, Promote Mexico's interpretation, as we explain, arguably makes that promise *less valuable* to Monster as well as potentially challenging to implement.  We nonetheless conclude the plain language of the agreement along with other considerations weigh in favor of Promote Mexico's interpretation.[3]

Promote Mexico's interpretation arguably creates a conundrum if, as in this case, both Promote and Mexico are sued for death, injury, or property damage occurring at the race.  In such a lawsuit, the plaintiff's theory presumably will be that Monster was negligent.  That is, it is unlikely a plaintiff could state a claim against Monster arising from death or injury at the race without alleging Monster's negligence.  As discussed, a complaint alleging Monster's negligence generally will trigger Monster's duty to defend Promote Mexico from claims arising from its gross negligence, because such a complaint, whether or

---

[3] Our discussion in this subpart is not based on Monster's arguments or the trial court's reasoning, but our own observations in interpreting the agreements.

not it alleges gross negligence, contains the potential for an ultimate judgment of gross negligence. Therefore, it is highly likely that a complaint against Monster and Promote Mexico arising from death or injury at the race would trigger Monster's obligation to defend Promote Mexico.

Consequently, although Promote Mexico has promised to defend Monster from claims of death or injury at the race, as a practical matter, if both Monster and Promote Mexico are sued for death or injury at the race, Monster will nearly always be obligated to defend Promote Mexico as well.

This conundrum could be resolved by interpreting the agreement as the trial court did, to exclude claims for injury or death at the race from Monster's promise to defend Promote Mexico from cases arising from Monster's gross negligence. Under the trial court's interpretation, there would be no reciprocal obligation—Promote Mexico would owe a duty to defend Monster, but Monster would not owe a duty to defend Promote Mexico.

The trial court's interpretation, however, runs afoul of the plain language of the agreement, to which we must give effect "if it is clear and explicit," and which must "be understood in [its] ordinary and popular sense" absent indication of "a special meaning." (*Crawford*, *supra*, 44 Cal.4th at p. 552.) Here, the agreement clearly and explicitly requires Monster to defend Promote Mexico from claims arising from Monster's gross negligence. Gross negligence, in its ordinary sense, encompasses gross negligence leading to death, injury, or property damage— indeed, it would be rare to find claims of gross negligence that do not involve death, injury, or property damage. The agreement nowhere indicates gross negligence has a "special meaning"

20

(*ibid.*) that would exempt claims for death or injury at the race. The trial court's interpretation imposes that exemption implicitly, essentially rewriting the agreement in contravention of its plain language.

To the extent interpreting the agreement to impose reciprocal defense obligations renders Promote Mexico's promise to defend Monster from claims of death or injury at the race of substantially lesser value to Monster, the trial court's contrary interpretation similarly would render Monster's promise to defend and indemnify Promote Mexico from claims arising from Monster's gross negligence of substantially lesser value. In a deal for sponsorship of a hazardous off-road race, a predictable scenario implicating Monster's gross negligence would be death, injury, or property damage at the race. The trial court's interpretation would afford Promote Mexico not only no defense but also no indemnity in that circumstance, even if Monster, for example, was ultimately found to have "unreasonably increased the inherent risk of an activity or actively concealed a known risk" from its personnel. (*Anderson, supra*, 4 Cal.App.5th at p. 881.) Either interpretation of the agreement diminishes the value of a promise to one party or the other, and thus neither interpretation is entitled to greater weight on that basis. Instead, the plain language must control.

We further note, even if arguendo the overlapping obligations render the promises to defend of minimal value in many situations, the agreement imposes not only duties to defend, but also indemnity obligations that remain salient. Unlike the duty to defend, which is triggered by the potential of liability encompassed by the promise of indemnity (*Davidson, supra*, 270 Cal.App.2d at p. 234), the duty to indemnify applies

21

" '*after* liability is established' " and "after damages are fixed in their amount." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 958.) In a case that goes to trial, the duty to indemnify would depend upon a determination of liability, which here could include a verdict distinguishing between no negligence, negligence, and gross negligence. Thus, the parties' various promises that depend on their level of negligence matter at the indemnity stage and would not necessarily overlap. For example, if a finder of fact found that Promote Mexico's actions, negligent or not, contributed to death or injury at the race, but Monster, while at fault, was not grossly negligent, Promote Mexico would have to indemnify Monster, but not vice versa.

We acknowledge that overlapping duties to defend may create practical difficulties in implementation, but this is a consequence of the parties' agreement. If on remand the trial court rejects Monster's claim that the signature of Promote Mexico's representative on the television sponsorship agreement was forged and thus grants summary adjudication in favor of Promote Mexico, the trial court, with the assistance of the parties, may determine in the first instance the appropriate procedure to effect these reciprocal obligations. Nothing in this opinion should be read to limit the trial court's discretion.

### 3. Monster's other arguments do not undercut our holding

Monster emphasizes that the agreement's subsection 6.01(b), governing Monster's defense obligations, contains its own subsection (iii) promising a defense against claims arising from Promote Mexico's use of Monster's intellectual property, which differs entirely from the subsection (iii) applicable to Promote

22

Mexico promising defense from death and injury claims. Monster argues this difference indicates "the parties understood that their respective duties would be triggered by very different conduct."

We agree subsections 6.01(a)(iii) and (b)(iii) set forth different conduct triggering the parties' respective defense obligations, but that does not conflict with our holding. Again, both parties are obligated to defend claims arising from their own negligence—ordinary negligence in Promote Mexico's case and gross negligence in Monster's case. Promote Mexico has the additional obligation to defend claims arising from death or injury at the race by Promote Mexico's actions, regardless of Promote Mexico's negligence, and Monster has the additional obligation to defend claims arising from Promote Mexico's use of Monster's intellectual property, regardless of Monster's negligence. The fact that Promote Mexico and Monster have different clauses as to what claims they will defend in the absence of negligence does not compel an interpretation of clauses concerning claims that do arise from negligence.

Monster argues interpreting subsection 6.01(b) to require it to defend Promote Mexico from personal injury claims "makes little sense . . . when nothing else in 6.01(b) or the rest of the agreement even suggests that Monster—a beverage company sponsoring the race event but with no role in operating it—had any duty regarding third-party personal injury claims." If an agreement specifies a party has a duty to defend against claims arising from its gross negligence, we see no need to include anything else in the agreement to indicate that promise encompasses claims for personal injury arising from gross negligence. To the extent Monster is suggesting the parties could not have intended Monster to defend claims for personal injury

23

given its limited role in the race, Monster identifies no evidence of such an intent.

Monster contends other provisions of the television sponsorship agreement indicate the parties did not intend Monster to defend and indemnify Promote Mexico from personal injury claims. Monster points to section 6.02 of the agreement, entitled "Limitation of Liability" (underscoring omitted). That provision is rendered entirely in capital letters, but for ease of reading we present it in normal text. It reads, in relevant part, "It is the intention and agreement of [Monster] and [Promote Mexico] that in no event will [Monster] . . . be liable to [Promote Mexico], or any third party for any indirect, incidental, special, or consequential damages, including without limitation loss of profits, revenue, or use, incurred by [Promote Mexico], or any third party (whether based upon contract, tort, negligence, warranty, product liability, strict liability, misappropriation, privacy or publicity rights, and/or otherwise . . . .)"

Monster argues this provision "can only be read as the broadest possible promise that Promote Mexico would not claim Monster's sponsorship of the race might make it liable to Promote Mexico, either directly or via third-party claims." This is incorrect. The above language does not absolve Monster of liability to Promote Mexico. At most, it appears to bar certain categories of damages, namely "indirect, incidental, special, or consequential damages." These terms, which Monster makes no attempt to discuss or define, do not include general damages, i.e., "those that necessarily or usually result from particular wrongful acts" (6 Witkin, Summary of Cal. Law (11th ed. 2024) Torts, § 1716 [distinguishing general and special damages]), and which could constitute the bulk recovery sought by a third party like

24

Angel in a personal injury lawsuit.  Thus, section 6.02 is not a broad waiver of liability, just a limitation on certain ancillary damages.  Section 6.02 therefore does not suggest the parties did not intend Monster to defend Promote Mexico from personal injury claims arising from Monster's gross negligence.

Monster also identifies section 6.03 of the agreement, entitled "Insurance" (underscoring omitted), which requires Promote Mexico to carry comprehensive liability insurance including, inter alia, "bodily injury and death insurance."  The agreement contains no equivalent requirement for Monster, which Monster argues "supports an inference that Promote Mexico was not concerned about Monster's resources in the event of a death or injury claim because [Promote Mexico] did not expect that section 6.01 would require Monster to defend or indemnify it for such claims."

Assuming arguendo the agreement imposes asymmetric insurance obligations on the parties, this cannot override the plain language of subsection 6.01(b), which obliges Monster to defend Promote Mexico from suits arising from Monster's gross negligence.  That "clear and explicit" language controls here (*Crawford*, *supra*, 44 Cal.4th at p. 552), and the parties' insurance obligations discussed two sections later is too thin a reed to suggest an alternative interpretation of that language.

## C.  Promote Mexico Has Forfeited the Issue of When Monster's Duty To Defend Arose

In its reply brief, Promote Mexico asks us to hold that Monster's duty to defend arose on January 7, 2020, the date Promote Mexico filed its cross-complaint.  Although Promote Mexico raised below the issue of when the duty to defend arose, it did not raise the issue in its writ petition and therefore has

25

forfeited the issue for purposes of this proceeding. (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 [contention raised below but not advanced before reviewing court forfeited]; *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10 [issue raised for first time in reply brief forfeited].) We express no opinion on that question, which the parties may address at trial or through future motion practice as necessary.

**D.    Remand is Necessary for the Trial Court to Consider Monster's Forgery Argument**

Our conclusion that the language of the agreement imposes a duty on Monster to defend Promote Mexico assumes that the agreement itself is valid. Monster below argued it was not, contending the signature of Promote Mexico's representative was forged. The trial court did not reach this argument given its finding the agreement, even if valid, did not impose a defense obligation on Monster.

Neither Promote Mexico nor Monster addresses the forgery issue in their briefing in this writ proceeding. Monster's supplemental opposition raising the forgery issue is not included in the exhibits before us. We therefore are unable to determine whether Monster's forgery argument has merit.

Accordingly, although we direct the trial court to vacate its order denying Promote Mexico's summary adjudication motion, we cannot, as Promote Mexico requests, further direct the trial court to grant summary adjudication in Promote Mexico's favor. Rather, we remand for the trial court to consider Monster's forgery argument and then enter a new order granting or denying

summary adjudication in light of the trial court's findings on that argument.

## DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Promote Mexico, LLC's motion for summary adjudication.  The matter is remanded for further proceedings consistent with this opinion.  Promote Mexico, LLC shall recover its costs with regard to this writ proceeding.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



CHANEY, J.



WEINGART, J.